**ALASKA NORTHERN DEVELOPMENT, INC., an Alaskan Corporation, Appellant,**

v.

**ALYESKA PIPELINE SERVICE COMPANY, a Delaware Corporation, Appellee.**

No. 6353.

Supreme Court of Alaska.

June 10, 1983.

James J. White, Ann Arbor, Mich., Peggy A. Roston, Anchorage, Edgar P. Boyko, Boyko & Davis, Anchorage, for appellant.

Charles P. Flynn, Nelson G. Page, Burr, Pease & Kurtz, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Alaska Northern Development, Inc. ("AND") appeals a judgment in favor of Alyeska Pipeline Service Co. ("Alyeska") in a dispute involving contract formation and interpretation. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In late October or early November 1976, David Reed, a shareholder and corporate president of AND, initiated discussion with Alyeska personnel in Fairbanks regarding the purchase of surplus parts. The Alyeska employees with whom Reed dealt were Juel Tyson, Clarence Terwilleger and Donald Bruce.

After a series of discussions, Terwilleger indicated that Reed's proposal should be put in writing so it could be submitted to management. With the assistance of AND's legal counsel, Reed prepared a letter of intent dated December 10, 1976. In this letter, AND proposed to purchase "the entire Alyeska inventory of Caterpillar parts." The place for the purchase price was left blank.

Alyeska responded with its own letter of intent dated December 11, 1976. The letter was drafted by Bruce and Tyson in consultation with William Rickett, Alyeska's manager of Contracts and Material Management. Again, the price term was absent. The letter contained the following language, which is the focus of this lawsuit: "Please consider this as said letter of intent, *subject to the final approval of the owner committee.*" (Emphasis added.)

Reed was given an unsigned draft of the December 11 letter, which was reviewed by AND's legal counsel. Reed then met with Rickett, and they agreed on sixty-five percent of Alyeska's price as the price term to be filled in the blank on the December 11 letter. Rickett filled in the blank as agreed and signed the letter. In March 1977, the owner committee rejected the proposal embodied in the December 11 letter of intent.

AND contends that the parties understood the subject to approval language to mean that the Alyeska owner committee[1] would review the proposed agreement only to determine whether the price was fair and reasonable. Alyeska contends that Reed was never advised of any such limitation on

---

1. The owner committee is composed of the owner oil companies of Alyeska, a joint ven- ture.

the authority of the owner committee. In April 1977, AND filed a complaint alleging that there was a contract between AND and Alyeska, which Alyeska breached. The complaint was later amended to include counts for reformation and punitive damages.

Alyeska moved for summary judgment on the punitive damages and breach of contract counts. The superior court granted summary judgment in favor of Alyeska on the punitive damages count. The court initially denied Alyeska's motion for summary judgment on the breach of contract claim; however, based on a review of the case after discovery had closed, the court announced at a hearing on September 26, 1980, that it would reverse its earlier ruling and grant Alyeska's motion. The court confirmed this ruling at a hearing on November 5, 1980, after consideration of AND's Motion for Clarification.

The superior court explained its rationale for granting summary judgment against AND on the breach of contract claim as follows. The court recognized that AND predicated its breach of contract claim on the theory that Reed's letter of December 10th was an offer and that Rickett's letter of December 11th was an acceptance of that offer. Viewed in that light, the court addressed "four theoretical possibilities in analyzing the interplay between the December 11th letter and the December 10th letter." First, the writings could be construed as an offer with a responding promise to pass the offer on to the owner committee, which was responsible for making such determinations. Second, the letters could be construed as an offer and a counter-offer that AND rejected. Third, the letters could be considered as an offer with a responding counter-offer containing, among other things, the unlimited right of the owner committee to review and approve. The court ruled that if the letters were ultimately found to fall into one of

these three categories, AND would not prevail, either because the offer embodied in the December 10 letter was never accepted, or because the owner committee never approved the proposal.

The only way in which AND might prevail was on the fourth possibility, i.e., the letters could be construed as an offer followed by a counter-offer limiting the authority of the owner committee to review only the contract price. The court ruled that AND could not establish a breach of contract claim under the fourth construction of the letters because the parol evidence rule barred the admission of extrinsic evidence that might limit the scope of the owner committee's approval power.[2] The only recourse for AND, therefore, was to seek reformation of the December 11 letter that limited the owner committee approval clause.

The case proceeded to trial on the reformation claim. After a six-week trial, the superior court concluded that AND had failed to establish that a specific agreement was not properly reduced to writing and therefore rejected its request to reform the December 11 letter. Attorney's fees were awarded to Alyeska.

On appeal, AND does not challenge the superior court's denial of reformation. Instead, it contends that the superior court erred in granting summary judgment on the breach of contract and punitive damages counts, erred in denying a trial by jury on the reformation count, erred in not permitting cross-examination for purposes of impeachment, and erred in awarding attorney's fees to Alyeska.

## II. APPLICATION OF THE PAROL EVIDENCE RULE

The superior court held that the parol evidence rule of the Uniform Commercial Code, section 2–202, codified as AS 45.02.-202,[3] applied to the December 11 letter and

---

**2.** AND also predicated its breach of contract claim on the existence of a prior oral agreement. The superior court implicitly rejected this theory in its analysis of the parol evidence rule.

**3.** AS 45.02.202 provides:

*Final written expression; parol or extrinsic evidence.* Terms with respect to which the confirmatory memoranda of the parties

therefore no extrinsic evidence could be presented to a jury which limited the owner committee's right of approval. AND contends that the court erred in applying the parol evidence rule. We disagree.

■ In order to exclude parol evidence concerning the inclusion of additional terms to a writing, a court must make the following determinations. First, the court must determine whether the writing under scrutiny was integrated, i.e., intended by the parties as a final expression of their agreement with respect to some or all of the terms included in the writing. Second, the court must determine whether evidence of a prior or contemporaneous agreement contradicts or is inconsistent with the integrated portion. If the evidence is contradictory or inconsistent, it is inadmissible. If it is consistent, it may nevertheless be excluded if the court concludes that the consistent term would necessarily have been included in the writing by the parties if they had intended it to be part of their agreement. AS 45.02.202; *Braund, Inc. v. White,* 486 P.2d 50, 56 (Alaska 1971); U.C.C. § 2–202 comment 3 (1977).

### A. *Was the December 11 Letter a Partial Integration?*

■ An integrated writing exists where the parties intend that the writing be a final expression of one or more terms of their agreement. *Kupka v. Morey,* 541 P.2d 740, 747 n. 8 (Alaska 1975); Restatement

(Second) of Contracts § 209(a) (1979). Whether a writing is integrated is a question of fact to be determined by the court in accordance with all relevant evidence. Restatement (Second) of Contracts § 209 comment c (1979).

In granting summary judgment on the breach of contract claim, the superior court stated that it had carefully considered all relevant evidence, including oral and written records of all facets of the business deal in question, to arrive at its finding that the agreement was partially integrated.[4] After the six-week trial on the reformation issue, the superior court reaffirmed this finding:

35. The plaintiff initially contends that the letter of December 11, 1976 (the letter) was not integrated or partially integrated and therefore the court was in error in granting summary judgment in favor of defendant on the contract counts of the plaintiff's complaint on September 26, 1980.

36. After considering the evidence submitted at trial, the court reaffirms its prior conclusion that the letter was integrated as to the Owners Committee's approval clause.

37. The parties intended to write down their discussions in a comprehensive form which allowed Reed to seek financing and allow the primary actors (Tyson, Bruce, Terwilleger, Rickett) to submit the concept embodied by the letter to higher management . . . .

---

agree, or which are otherwise set out in a writing intended by the parties as a final expression of their agreement with respect to the terms included in the writing, may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement, but may be explained or supplemented

(1) by course of dealing or usage of trade (AS 45.01.205) or by course of performance (AS 45.02.208); and

(2) by evidence of consistent additional terms unless the court finds the writing was intended also as a complete and exclusive statement of the terms of the agreement.

4. At the hearing on AND's Motion for Clarification, the superior court stated:

[I]t seems to me absolutely conclusive on this evidence, and I'm making this as a finding of

fact, that this agreement is partially integrated, and I'm not making it by reference only to the four corners of the—of the writings but reference to all the extrinsic evidence that has been proferred to me, read everybody's deposition, considered in detail all the processes of negotiations, everything that was said and done by everybody as related by them up till the time that Rickett included the language in the letter and turned it over to Reed. So we're not here talking about the for [sic] corners or ambiguity or anything like that. We're talking about all the extrinsic evidence, meaning on balance to a conclusion more probable than not that this is a partially integrated agreement.

38. There are three subjects upon which plaintiff seeks reformation.... As to the first, [limiting the Owner Committee to a consideration of price] which has been plaintiff's primary focus, the court finds that such reference was integrated such that the parole [sic] evidence rule would bar any inconsistent testimony. Testimony that the owners were limited to "price" in their review is inconsistent.

. . . .

41. With respect to the Owners Committee's approval clause, according to the plaintiff's contention the owners were entitled to review the transaction, on whatever basis, only one time. This was testified to by both Mr. Reed and argued by plaintiff in closing .... It was also conceded in closing that the review by the owners, on whatever standard, would occur prior to any formal contract being negotiated and executed .... This is also consistent with the testimony of each of the participants.

42. In addition, Mr. Reed, in consultation with Ed Merdes and Henry Camarot, his attorneys, tendered the letter of March 4, 1977, as a document which could serve as "the contract" .... The March 4 letter contains no further reference to the Owners Committee's approval function .... Therefore, I find that as to the Owners Committee's approval ... the letter of December 11 constitutes an integration or partial integration .... This having been established, the analysis outlined by the court on September 26, 1980, when granting defendant's motion for summary judgment on the contract claims is applicable. [Citations omitted.]

After reviewing the record, we cannot say that this finding of a partial integration was clearly erroneous.

AND contends that the "clearly erroneous" standard used for reviewing findings of fact issued after a trial does not apply because the breach of contract claim was dismissed by summary judgment. Under the circumstances of this case, we believe that the clearly erroneous standard applies rather than the standard of review used in summary judgment cases because the summary judgment ruling was not a final judgment for purposes of appeal.

Rule 54(b) of the Alaska Rules of Civil Procedure provides in relevant part:

When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one ... of the claims ... upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction ... the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In the pre-trial conference, the superior court indicated that it would make a Rule 54(b) determination if the parties so desired. The parties did not request a Rule 54(b) determination and none was made. During this conference, the court also made it clear that it was willing at the reformation trial to hear all evidence bearing on contract formation, including the negotiations leading up to the letters of intent and the meaning the parties placed on these negotiations and letters. The court emphasized that it was "not cutting out anybody on presenting extrinsic evidence ... [and] that under Rule 54 the court can, until the end of the case ... change any decision it's previously reached."

AND contends that the superior court's determination that the only issue at trial concerned reformation "necessarily foreclosed a variety of factual and legal issues on contract formation and interpretation," but does not indicate what evidence it was foreclosed from presenting on these issues. Our review of the record indicates that the integration issue was fully explored by AND during the trial.

After six weeks of testimony, during which time the court had the opportunity to view the demeanor and to judge the credibility of the witnesses, the superior court entered written findings of fact and

conclusions of law. As shown in the portion quoted above, these findings reviewed and reaffirmed the findings made in the court's prior summary judgment ruling. Accordingly, the appropriate standard of review is the same as for any other finding of fact, i.e., that the superior court's findings of fact must be upheld unless "clearly erroneous." Alaska R.Civ.P. 52(a). As stated above, the finding of partial integration was not clearly erroneous; therefore, we find no merit in AND's contentions to the contrary.

### B. Does the Excluded Evidence Contradict the Integrated Terms?

■ Having found a partial integration, the next determination is whether the excluded evidence contradicts the integrated portion of the writing. Comment b to section 215 of the Restatement (Second) of Contracts is helpful in resolving this issue.[5] Comment b states:

> An earlier agreement may help the interpretation of a later one, but it may not contradict a binding later integrated agreement. Whether there is a contradiction depends . . . on whether the two are consistent or inconsistent. This is a question which often cannot be determined from the face of the writing; the writing must first be applied to its subject matter and placed in context. The question is then decided by the court as part of a question of interpretation. Where reasonable people could differ as to the credibility of the evidence offered and the evidence if believed could lead a reasonable person to interpret the writing as claimed by the proponent of the evidence, the question of credibility and the choice among reasonable inferences should be treated as questions of fact. But the asserted meaning must be one to which the language of the writing, read in context, is reasonably susceptible. If no other meaning is reasonable, the court

should rule as a matter of law that the meaning is established.

According to comment b, therefore, a question of interpretation may arise before the contradiction issue can be resolved. If the evidence conflicts, the choice between competing inferences is for the trier of fact to resolve. *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d 767, 771 n. 2 (Alaska 1982). The meaning is determined as a matter of law, however, if "the asserted meaning [is not] one to which the language of the writing, read in context, is reasonably susceptible." Restatement (Second) of Contracts § 215 comment b (1979). *See also* J. Calamari & J. Perillo, The Law of Contracts §§ 3–12, 3–13 (2d ed. 1977).

■ AND contends that the superior court erred in granting summary judgment because the evidence conflicted as to the meaning of the owner committee approval clause. It concludes that under *Alyeska* it was entitled to a jury trial on the interpretation issue. Alyeska contends, and the superior court ruled, that a jury trial was inappropriate because, as a matter of law, AND's asserted meaning of the clause at issue was not reasonably susceptible to the language of the writing. The superior court stated:

> The Court is making the . . . ruling that the offer of evidence to show that Rickett's letter really meant to limit owner committee approval to the price term alone . . . is not reasonably susceptible—or the writing is not reasonably susceptible to that purpose. And therefore, that extrinsic evidence operates to contradict the writing, not specific words in the writing, but the words in the context of the totality of the writing and the totality of the extrinsic evidence.

We agree that the words used in the December 11 letter are not reasonably susceptible to the interpretation advanced by AND. Therefore, we find no merit to AND's contention that it was entitled to a jury trial on the interpretation issue.

---

**5.** Restatement (Second) of Contracts § 215, which parallels the rule stated in U.C.C. § 2–202, reads: "Except as stated in the preceding Section, where there is a binding agreement, either completely or partially integrated, evidence of prior or contemporaneous agreements or negotiations is not admissible in evidence to contradict a term of the writing."

After rejecting the extrinsic evidence for purposes of interpretation, the superior court found AND's offered testimony, that the owner committee's approval power was limited to approval of the price, to be inconsistent with and contradictory to the language used by the negotiators in the December 11 letter. AND contends that the offered testimony did not contradict, but rather explained or supplemented the writing with consistent additional terms. For this contention, AND relies on the standard articulated in *Hunt Foods & Industries, Inc. v. Doliner,* 26 A.D.2d 41, 270 N.Y.S.2d 937 (N.Y.App.1966). In *Hunt Foods,* the defendant signed an option agreement under which he agreed to sell stock to Hunt Foods at a given price per share. When Hunt Foods attempted to exercise the option, the defendant contended that the option could only be exercised if the defendant had received offers from a third party. The court held that section 2–202 did not bar this evidence from being admitted because it held that the proposed oral condition to the option agreement was not "inconsistent" within the meaning of section 2–202; to be inconsistent, "the term must contradict or negate a term of the writing. A term or condition which has a lesser effect is provable." *Id.* 270 N.Y.S.2d at 940.

■ The narrow view of consistency expressed in *Hunt Foods* has been criticized. In *Snyder v. Herbert Greenbaum & Associates, Inc.,* 38 Md.App. 144, 380 A.2d 618 (Md.App.1977), the court held that the parol evidence of a contractual right to unilateral rescission was inconsistent with a written agreement for the sale and installation of carpeting. The court defined "inconsistency" as used in section 2–202(b) as "the absence of reasonable harmony in terms of the language *and* respective obligations of the parties." *Id.* 380 A.2d at 623 (emphasis in original) (citing U.C.C. § 1–205(4)). *Accord: Luria Brothers & Co. v. Pielet Brothers Scrap Iron & Metal, Inc.,* 600 F.2d 103, 111 (7th Cir.1979); *Southern Concrete Services, Inc. v. Mableton Contractors, Inc.,* 407 F.Supp. 581 (N.D.Ga.1975), *aff'd mem.,* 569 F.2d 1154 (5th Cir.1978).

We agree with this view of inconsistency and reject the view expressed in *Hunt Foods.*[6] Under this definition of inconsistency, it is clear that the proffered parol evidence limiting the owner committee's right of final approval to price is inconsistent with the integrated term that unconditionally gives the committee the right to approval. Therefore, the superior court was correct in refusing to admit parol evidence on this issue.[7]

## III. DENIAL OF A JURY TRIAL

At the trial on reformation, AND sought reformation of the contract and then recovery for Alyeska's breach of the contract as reformed. AND requested a jury trial, but the superior court refused to empanel a jury until it determined whether the contract should be reformed. The court stated that only if it decided to reform the contract would it empanel a jury to determine whether Alyeska breached the reformed contract.

AND contends that it was entitled to a jury trial under article I, section 16, of the Alaska Constitution, which preserves the right to a trial by jury in suits that determine legal rights. AND recognizes that reformation is an equitable, not legal, determination and therefore one for the court, not the jury, to decide; however, it con-

---

**6.** *Hunt Foods* was implicitly rejected in *Johnson v. Curran,* 633 P.2d 994, 996–97 (Alaska 1981) (parol evidence concerning an early termination right based on nightclub owner's dissatisfaction with the band's performance was inconsistent with parties' written contract specifying definite time without mention of any right of early termination and thus inadmissible).

**7.** Our affirmance of the superior court's holding that the proposed version is inconsistent with the integrated clause obviates discussion of whether the addition, if consistent, would have been included in the December 11 letter. Furthermore, we decline to reach AND's contentions regarding the applicability of U.C.C. § 2–207 because AND never raised the § 2–207 argument at the superior court level. *See, e.g., Jeffries v. Glacier State Telephone Co.,* 604 P.2d 4, 11 (Alaska 1979).

tends that it was entitled to a jury trial because the court resolved legal issues concerning whether the parties had entered into a contract.

In support of its contention, AND relies on *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988, 996 (1959), which held that when a case involves both legal and equitable claims, the facts common to such claims must be first tried to a jury if a proper demand is made.[8] *Beacon Theatres* does not apply in this case because the trial did not involve both legal and equitable claims. As we stated earlier, the superior court correctly dismissed the breach of contract claim because the parol evidence rule barred the introduction of any extrinsic evidence to prove that the owner committee's approval power was limited to price. Therefore, the only issue at trial was whether the alleged contract should be reformed, which is an equitable determination.

 The correct procedure when an action is brought to reform a contract and to recover on it as reformed is explained as follows: "If plaintiff seeks reformation and money damages on the contract as reformed, the court may decide whether to allow reformation but there is a right to jury trial on the reformed contract." 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2316, at 83 (1971). *See also* 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 38.22 (2d ed. 1982). Under this procedure, if the superior court had reformed the contract, AND would be entitled to a jury trial concerning the breach of contract as reformed. Because the superior court refused to reform the contract, a ruling that AND does not contest, AND has no legal claim to present to a jury. Therefore, the superior court did not err in denying AND's request for a jury trial.

### IV. PUNITIVE DAMAGES

AND contends that punitive damages are warranted in this case based on the follow-

ing theory of conspiracy: Alyeska had an interest in inflating pipeline costs because, under the federal system of price controls, higher construction costs result in higher pipeline rates per barrel of oil. Alyeska breached the agreement with AND because the sale of surplus parts to AND would have decreased pipeline costs and therefore lowered the tariff. Therefore, punitive damages are appropriate because Alyeska's actions were tortious in nature and the public interest is served by the deterrent effect that punitive damages would have upon the future conduct of the oil companies that own Alyeska.

 Punitive damages are not available in a breach of contract action unless " 'the wrongdoer's conduct can be characterized as outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another.' " *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d at 774 (quoting *Bridges v. Alaska Housing Authority,* 375 P.2d 696, 702 (Alaska 1962)). Whether malice is present is a question of fact; however, "where there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not submit the punitive damages issue to the jury." *Id.*

 AND negotiated an arms-length business deal with Alyeska. It does not point to any evidence that would give rise to an "inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice." Therefore, it was not error for the superior court to grant summary judgment against AND on the punitive damages issue.

### V. LIMITING THE SCOPE OF CROSS–EXAMINATION

At the reformation trial, AND attempted to cross-examine Alyeska's vice president of administration, George Nelson, with regard

**8.** The rule in *Beacon Theatres* is binding in federal courts only; however, in *Shope v. Sims,* 658 P.2d 1336, 1340 (Alaska 1983), we adopted this rule in interpreting article I, section 16, of the Alaska Constitution.

to whether he had ever had discussions on the impact that the proposed sale to AND would have on the cost of the pipeline project. AND contended that it was offering the evidence for the purpose of impeaching Nelson's testimony that he had no knowledge of the AND-Alyeska agreement on December 17, 1976, hoping to show that Nelson had a motive to distort his testimony. The superior court did not permit AND's line of questioning because, though tangentially relevant, it was concerned that the trial could turn into a proceeding on the truth or falsity of the conspiracy theory.

"Although relevant, evidence may be excluded if its probative value is outweighed by ... considerations of undue delay [and] waste of time." Alaska R.Evid. 403. The standard for appellate review of a trial court's decision to exclude testimony is whether it abused its discretion. *Babinec v. State*, 586 P.2d 966, 968 (Alaska 1978).

It was the superior court's express concern to prevent the "side show [from] swallow[ing] up the circus." To allow counsel to fully examine Nelson as to his motivation would require that the court allow an exploration into the underlying conspiracy theory. The court stated that AND would not be permitted to proceed with its line of questioning unless AND could produce direct evidence that AND was an intended victim under the conspiracy theory. AND was unable to do so. Under these circumstances, the superior court did not abuse its discretion in limiting AND's cross-examination of Nelson.

### VI. ATTORNEY'S FEES

AND challenges the superior court's award of approximately $463,000.00 in attorney's fees to Alyeska, which was fifty-three percent of its actual attorney's fees. Civil Rule 82 requires the court to award attorney's fees to partially compensate the prevailing party for attorney's fees incurred during the proceeding. This

award will be set aside on appeal only if it is manifestly unreasonable and amounts to a clear abuse of discretion. *E.g., Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970).

At the end of the trial, Alyeska asked for reimbursement of its full attorney's fees on the ground that the lawsuit had been brought in bad faith.[9] The court did not find that the lawsuit had been maintained in bad faith. It did find, however, that proceeding to trial on the reformation claim was frivolous at the time summary judgment was granted in the fall of 1980. The court then reviewed Alyeska's attorney's participation in the case, services rendered, and the nature of the case, and determined that an appropriate partial award for attorney's fees necessary to a prudent defense would be fifty-three percent of Alyeska's actual attorney's fees, or sixty-six percent of the fee base established by the court. We do not find this award to be manifestly unreasonable and therefore uphold the award.

For the foregoing reasons, the judgment of the superior court is AFFIRMED.

**V.F., Appellant,**

v.

---

**9.** Full or substantially full attorney's fees may be awarded if the trial court finds that the losing party acted in bad faith in asserting a claim or defense. *Davis v. Hallett,* 587 P.2d 1170, 1171–72 (Alaska 1978); *Malvo v. J.C. Penney Co.,* 512 P.2d 575, 588 (Alaska 1973).