**ANCHORAGE NISSAN, INC., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–7119.

Supreme Court of Alaska.

July 18, 1997.

Victor C. Krumm, Law Office of Victor C. Krumm, P.A., Sarasota, FL, for Appellant.

James Forbes, Ingaldson Maassen, P.C., Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

A civil jury found that Anchorage Nissan, Inc. (ANI) committed unfair or deceptive business acts involving the sale of new or used vehicles. ANI asserts on appeal that the superior court committed various errors before and during trial. We affirm.

### II. FACTS AND PROCEEDINGS

In August 1993 the State of Alaska filed suit against ANI and several of its employees, alleging violations of the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 (the Act).[1] The complaint

---

1. AS 45.50.471 outlaws unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce:

   (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.

   (b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:

   [The list of examples of unfair or deceptive acts mostly involve misrepresentations of fact to the consumer by a seller of goods or services. These include representing that goods are new when they are not; representing that goods are of a particular quality when they are not; using deception, fraud, etc., with the intent that others rely upon that concealment or omission with the sale of goods; representing that an agreement involves rights, remedies or obligations which it does not involve; knowingly making false statements regarding the need for parts, replacement, or repair service; and resetting the odometer of a vehicle. *See* AS 45.50.471(b)(5), (6), (12), (14), (15), (18).]

described the sale by ANI of a 1991 Ford Escort to Charles and Mary McCormick. ANI allegedly failed to disclose to the McCormicks that the vehicle had been involved in a serious accident and that the previous owner had told ANI of an odometer discrepancy. The complaint alleged violations of AS 45.50.471(b)(11) and (12), as well as common law fraud. ANI answered and filed a counterclaim against the State of Alaska and a third-party complaint against State Farm Insurance Company, alleging negligence and failure to warn based upon their knowledge of the accident involving the Escort.

The State filed a first amended complaint in September 1993 adding Shawn Gibbons, an ANI employee, as a defendant. In addition to the 1991 Escort transaction, it alleged violations of AS 45.50.470(b)(11), (12), and (18) and common law fraud arising out of four other transactions. Two of these transactions are relevant to this appeal.[2]

One transaction involved the sale of a used 1992 Chevrolet Blazer, previously owned by a rental car company and previously involved in a major accident, to Anna and John Denis. According to the complaint, ANI told the Denises that the factory warranty was still in effect; that the car had not been involved in an accident; and that the car had not been a "fleet" vehicle owned by a rental car company.

> (c) The unlawful acts and practices listed in (b) of this section are in addition to and do not limit the types of unlawful acts and practices actionable at common law or under other state statutes.
>
> AS 45.50.471.

**2.** The other two transactions involved the sale of the same 1986 Nissan truck. According to the complaint, ANI sold the truck to Melissa Myers, but did not disclose that the vehicle had a bent frame as a result of a serious accident. Due to the bent frame, Myers experienced difficulty in controlling the vehicle, including problems with the vehicle's alignment, and returned the truck to ANI for repairs. ANI could not repair the truck and accepted the return of the truck.

The same 1986 Nissan truck was then sold to William and Kelly Rettberg, who purchased an extended warranty. According to the complaint, the Rettbergs were told that the truck had not

Another transaction involved the sale of a 1985 Chevrolet Blazer to Monte Parish by ANI employee Shawn Gibbons on behalf of his father, Melvin Gibbons in October 1992. According to the complaint, the Blazer was traded to ANI in April 1992 with an odometer reading of 98,887 miles. By the time it was sold to Parish, the odometer read approximately 59,000 miles. When ANI sold the car to Melvin Gibbons in May 1992, it executed an "odometer disclosure statement" giving the vehicle's mileage as "unknown."

ANI answered the amended complaint and filed a counterclaim and third party complaint, alleging that the State knew of, and negligently allowed to continue, a practice of insurance companies whereby severely damaged vehicles were retitled or resold to repair shops, after which they would be sold to the public without reflection of the accident on the vehicle's title. The counterclaim alleged a "secret agreement" between the State and major insurance companies.

State Farm Insurance Company was dismissed with prejudice as a third party defendant by stipulation in February 1994. The superior court granted partial summary judgment to ANI by dismissing the common law fraud count in April 1994.

On May 12 the State moved for leave to file a second amended complaint under Civil Rule 15(a). The court granted leave on June 7. The second amended complaint added counts relating to four additional transactions.[3] It alleged, *inter alia,* violations of AS

been involved in an accident. When the Rettbergs discovered the alignment problem, ANI refused to provide service to the truck under the extended warranty.

**3.** The first involved the sale of a new Eagle Talon to Mike Ralston. According to the complaint, Ralston asked ANI for all "work orders" describing work performed on the car before the sale. However, ANI did not disclose the work order for a rebuilt engine.

The second involved the sale of a 1986 Subaru to Trevelyan Anderson. According to the complaint, ANI represented to Anderson that the car was "in great shape" even though it knew from previous inspections that the car needed extensive repairs.

The third involved the sale of a 1979 Datsun 280ZX to Bryan Boettcher. According to the complaint, the car had been in an accident and had not been properly repaired. The complaint

45.45.200 (prohibiting misrepresentations in the repairs of motor vehicles), AS 45.50.471(a), and AS 45.50.471(b)(4), (5), (6), (11), (12), (14), (15), (18) and (23).

In June the State moved to set the case for trial. In a pretrial order dated August 5, 1994, the superior court set the trial for December 28, 1994, with most discovery to be completed by October 1. ANI answered and counterclaimed on August 19, claiming that the State had assumed and violated a duty to the public and to automobile purchasers to oversee the practices of insurance companies.

ANI and the other defendants asked the court for a continuance in September. ANI claimed that the State had filed a lengthy witness list and had not begun discovery on ANI's counterclaim. This motion was denied at the end of September, though the State was directed to file a revised witness list.

ANI again moved for a continuance in November 1994. It argued that discovery could not be completed before trial on the main claim or the counterclaim and that one of the State's experts, Scotty Dawkins, had not yet completed his examination of the vehicles. The superior court also denied this motion.

Shortly before trial, the superior court held that the State owed ANI no duty and granted summary judgment to the State on ANI's counterclaim.

After trial, the jury returned a special verdict, finding that ANI had committed eighteen deceptive or unfair acts in violation of AS 45.50.471. The superior court entered final judgment, permanently enjoining ANI from violating AS 45.50.471(a) and (b)(4), (6), (11), (12), (14), (15), and (23). It also awarded the State civil penalties totaling $64,000

for fourteen of the eighteen violations. The court also awarded the State attorney's fees and costs.

ANI now appeals from the grant of partial summary judgment to the State on ANI's counterclaim; from the denial of several of its pretrial motions; from the denial of its motion for a directed verdict; from evidentiary rulings; and on issues related to the jury instructions.

### III. *DISCUSSION*

#### A. *Grant of Summary Judgment to the State on ANI's Counterclaim*

ANI argues that the court erred in dismissing ANI's counterclaim on summary judgment for the State.[4] ANI's counterclaim alleged negligence by the State's Department of Law and Department of Public Safety.

ANI's theory was that the State knew that insurance companies followed a practice by which, after a major accident, the insurer would assume title to the damaged car upon paying the insured for the loss. According to ANI, the insurance company would retitle the car and sell it to a repair shop, knowing that it would subsequently be sold to the public without disclosure of the accident. ANI reasoned that the State assumed a duty relating to this practice through some combination of: its knowledge of the practice; the Department of Public Safety's power to suspend or revoke registration of a vehicle that has been destroyed beyond repair; the Department of Law's power to enforce the Unfair Trade Practices and Consumer Protection Act, AS 45.50.071; and a "secret or confidential agreement" between the State and "certain major insurance carriers, including State Farm, relating to 'totaled' vehicles, in violation of public policy." The State

alleged that ANI either knew or should have known after reasonable inspection that the car was damaged, and breached its duty to disclose the damage to Boettcher.

The fourth involved the sale of a 1990 Nissan Maxima to John Nielson. According to the complaint, Nielson returned the car to ANI complaining that the Antilock Braking System (ABS) light was on. An ANI employee took the car and returned it twenty minutes later, saying there should be no more problems. Nielson later discovered that the ABS system had not been re-

paired, but the ABS sensor wires had been cut. The complaint also alleged that ANI misrepresented the need for other repairs to the car.

4. In reviewing a grant of summary judgment, we determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law; we draw all reasonable inferences of fact in favor of the non-moving party and against the moving party. *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1134 (Alaska 1996).

breached this duty by failing to oversee the practices of State Farm in relation to severely damaged vehicles.[5]

The State first moved to dismiss on September 13, 1994, arguing that it could not be held liable for not enforcing a given law. The superior court denied that motion, writing that "[t]he allegation of a 'secret agreement' removes this case from a simple lack of enforcement issue."

The State then submitted an affidavit from Jay Dulany, the Director of the Division of Motor Vehicles at the Department of Public Safety. Dulany described discussions he had with representatives of some insurance companies dealing with the procedures they should follow in selling vehicles that were total losses. He affied that he

> simply gave the insurance companies verbal directions as to how they were expected to comply with the law. . . .
>
> . . . .
>
> . . . [T]here have never been any written agreements between the state DMV and the insurance companies regarding the processing of titles to totaled vehicles. There have been meetings at which the insurance companies were told what the law required, and they were told to follow the law. But there have been no written agreements of which I am aware.

On December 27 the court granted summary judgment to the State and dismissed the counterclaim, stating:

> [ANI] submitted no evidence of an agreement which the state might (or might not) have had an obligation to enforce. The state cannot be sued for making discretionary decisions about which laws to enforce most vigorously, absent imposition of a duty of care in accord with the factors set forth in *D.S.W. v. Fairbanks North Star Borough School Dist.*, 628 P.2d 554, 555

(Alaska 1981). No duty arises under the *D.S.W.* factors in this case.

It is not clear whether the superior court granted summary judgment because it concluded ANI failed to establish an issue of fact as to the existence of an agreement, or because it concluded the State owed no duty as a matter of law even if an agreement existed.

■ We think that there is no material fact issue which prevents summary judgment against ANI. Civil Rule 56(e) provides that a party opposing summary judgment "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Alaska R. Civ. P. 56(e). ANI failed to show any "agreement" other than oral instructions to the insurance companies relating to the law's requirements, or perhaps the solicitation of "agreement" by the insurance companies to surrender the title documents of totaled vehicles to the DMV under 13 Alaska Administrative Code (AAC) 70.240.[6] The affidavits submitted by the State show that there was a discussion with insurance companies as to whether the law required them to surrender title of a totaled vehicle for marking by DMV; they show nothing more.

ANI argues that the State assumed a duty of care through its knowledge of the practice and its actions with regard to the practice. A party assuming a duty through its own undertaking must discharge that duty with due care. *See State, Dep't of Nat. Resources v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 773 (Alaska 1993); *see also Restatement (Second) of Torts* § 324A (1965). Because there is no evidence of an agreement or any undertaking by the State to oversee the practices of insurance companies with regard to damaged vehicles, we hold that the State has not assumed a duty of care.

---

**5.** On appeal, ANI phrases the alleged duty as "a duty to take reasonable steps to ensure that wrecked vehicles were properly retitled to provide notice to subsequent purchasers."

**6.** The regulation imposes a duty to surrender title on an insurance company "obtaining title to an unrepairable vehicle through the satisfaction of an insurance claim." But totaled vehicles are

not necessarily "unrepairable," as the practice at issue here suggests; the cost of repair merely exceeds the fair market value of the vehicle. The closest statutory requirement is similarly inapplicable here. *See* AS 28.10.351 ("A person who dismantles, scraps, or destroys a registered vehicle shall immediately forward to the department the certificates of title and registration. . . .").

The State cannot be held liable for not enforcing a statute unless it owed a duty of care to the complaining party. We have held that the judiciary may not interfere with the executive discretion of the Attorney General's Office by telling it when or how to enforce the laws. *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950–51 (Alaska 1975).

■ There is no other basis for finding that the State owed a duty of care to ANI and other car dealerships. In determining whether a duty of care exists, we consider a number of factors:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981) (citation omitted); *see also Hawks v. State, Dep't of Pub. Safety*, 908 P.2d 1013, 1016 (Alaska 1995); *Estate of Day v. Willis*, 897 P.2d 78, 81 (Alaska 1995).[7]

The circumstances of this case are lacking with respect to each of the *D.S.W.* factors. That ANI would buy and resell a car without knowledge that it had severe structural damage seems unforeseeable and indeed unlikely still. The certainty that ANI suffered damage due to any failure of the State to protect car buyers is small. The connection between the State's conduct and any injury to ANI seems distant at best. Little moral blame can be attached to the State under the circumstances. Little future harm will be prevented by imposing a duty of care. The burden on the State could be significant. The availability of insurance has no bearing here. The *D.S.W.* factors impose on the State no duty of care to ANI or other dealerships in this situation.

Because we do not interfere with executive discretion to enforce State law and because the State owes and has assumed no duty of care, we affirm the superior court's grant of summary judgment in favor of the State on ANI's counterclaim.

ANI also argues that the superior court erroneously held that the State was entitled to discretionary function immunity. It appears the court did not reach the immunity issue, but in any event our conclusion that the State owed ANI no duty of care makes it unnecessary for us to consider whether the State was immune from ANI's claim. *Beilgard v. State*, 896 P.2d 230, 234 & n. 8 (Alaska 1995).

**B.** *Denial of ANI's Motions for a Continuance*

■ Twice ANI moved for a continuance. The trial court denied both motions. ANI appeals these denials. ANI advances five reasons why the trial should have been continued.[8] We address each in turn.

**1.** *Addition of four new transactions*

■ ANI's best argument is that it had insufficient time to conduct discovery on the last four transactions added by the second amended complaint. It points out that the State moved for trial only one week after the court granted the State leave to file the second amended complaint.

ANI's argument, however, overstates the prejudice ANI suffered. The State was granted leave to amend the complaint on June 7, 1994, but the State mailed a copy of the second amended complaint to ANI on May 12. The State moved for trial on June

---

**7.** *D.S.W.* is not the exclusive source of a duty of care. For example, in addition to the considerations outlined in *D.S.W.*, a statute may create a duty of care. *Busby v. Municipality of Anchorage*, 741 P.2d 230, 233 (Alaska 1987). ANI does not argue here that a statute creates a duty to ANI on behalf of the State.

**8.** We review the trial court's refusal to grant a motion for a continuance for an abuse of discretion. *Gregoire v. National Bank of Alaska*, 413 P.2d 27, 33 (Alaska), *cert. denied*, 385 U.S. 923, 87 S.Ct. 238, 17 L.Ed.2d 147 (1966).

14, but trial was set for December 28, with discovery to be completed by October 1. Thus, ANI had over four months to conduct discovery on the four new transactions. This should have been more than enough time. The addition of the four new transactions did not oblige the trial court to continue the trial.[9]

### 2. *Length of State's witness list*

■ In opposing ANI's motion to remove the case from the fast-track calendar,[10] the State wrote that, "[a]lthough the state has identified 48 witnesses on its preliminary witness list, that list was furnished to facilitate [ANI's] opportunity to complete discovery.... The state will likely call fewer than 20 witnesses, since many of those listed on the state's Preliminary Witness List would offer cumulative testimony." ANI argues that the State's subsequent submission of a list of fifty-five witnesses, including nineteen experts, was a surprise and grounds for continuance.

ANI's argument is misleading. The State made it clear that many of the witnesses on its list were cumulative and would not be called. This practice is not uncommon. Of the "nineteen experts" listed, sixteen were listed as "percipient[s] and expert[s]" while only three were listed as "expert[s]." In its August 31, 1994, response to ANI's expert witness interrogatories, the State made it clear that Scotty Dawkins was to be its primary expert and that those listed as "percipients and experts" were primarily auto mechanics. Although they would be fact witnesses because of their exposure to given vehicles, they might be asked to give expert opinions about the vehicles' condition. We also note that when the superior court denied ANI's September 2 motion for a continuance it also ordered the State to pare its witness list to thirty-five names, and the State did so.[11] The length of the State's witness list did not require a continuance.

### 3. *Discovery on counterclaim*

ANI argues that it could not adequately conduct discovery on its counterclaim. Because the trial court properly granted summary judgment to the State on the counterclaim, the issue is moot unless ANI was prejudiced in its ability to oppose summary judgment.

In denying ANI's second motion for a continuance, the superior court wrote:

The counterclaim which forms the basis for the motion to continue arises out of allegations set forth in the original complaint. The fact that defendants brought the counterclaim only in their answer to the second amended complaint and have run into alleged delays in conducting discovery on this claim does not warrant delay of this trial.

The superior court believed that ANI did not deserve a continuance because its counterclaim was untimely and because it had delayed in conducting discovery. In fact, ANI's counterclaim to the State's first amended complaint was substantially the same as its original counterclaim.[12]

Nevertheless, the superior court did not abuse its discretion in denying a continuance. ANI primarily complains that it had unsuccessfully sought documents relating to the supposed secret agreement. As seen in Part III.A above, ANI has not been able to demonstrate that this was a result of State chi-

---

9. The State also argues that ANI had ample opportunity to conduct discovery relevant to the last four vehicles because it knew of the problems when the purchasers brought the vehicles back to ANI. This argument is unpersuasive. Just because ANI might have known of a problem did not mean it knew that it someday would have to defend a lawsuit relating to that problem.

10. This case was subject to Alaska Civil Rule 16.1. After trial has been set, a continuance may be granted under that rule only for "extraordinary good cause." Alaska R. Civ. P. 16.1(i).

Here, both continuances were filed after trial was scheduled.

11. Although this order was entered on September 30, 1994, toward the end of the discovery period, ANI had until October 28 to depose witnesses.

12. The counterclaim to the original complaint was based on two similar negligence theories, failure to investigate vehicles that had been in an accident and failure to warn of improper titling procedures.

canery rather than the simple non-existence of facts supporting the counterclaim.

#### 4. *Dawkins testimony*

ANI argues that the State was late in supplementing the opinions of Dawkins, the State's primary expert witness, concerning his inspections of several of the vehicles. In the superior court, ANI raised the State's failure when ANI moved to limit Dawkins's testimony.[13] ANI now argues that the State's failure required a continuance.

The State answers that the delay was attributable to ANI. In response to the State's request for production, ANI wrote: "Vehicles are available for inspection at mutually convenient time during the two week period of September 27–October 7, at ANI." However, when Dawkins tried to inspect the vehicles, he found that the Datsun had been sold. Furthermore, the 1992 Blazer was made available to Dawkins only in late October, and Dawkins had some problems coordinating the inspection of the Subaru with one of ANI's experts. Dawkins further affied that he was in close contact with ANI's experts and that they were "well aware" of his opinions virtually from the time he formed them.

#### 5. *Levy testimony*

ANI complains that only eight days before trial the State announced it would call a "wholly new expert," Gerald Levy from Cal Worthington Ford, to testify to issues concerning Ford Motor Company's warranty coverage. We conclude from the following circumstances that ANI was either not prejudiced, or was given a reasonable opportunity to protect itself.

ANI's August 26, 1994, witness list listed "Ray Jaeger or designee (expert), Cal Worthington Ford," to testify on warranty issues. The State's final witness list listed a "Designated Expert on Warranty Coverage" from Cal Worthington Ford who would testify that

the 1991 Ford Escort was not eligible for complete factory warranty coverage when ANI sold it to the McCormick family.

Further, ANI's attorney complained at trial that he might have deposed Levy if he had known Levy's name and the subject of his proposed testimony. The trial court found that the State may have erred in not listing Levy's name earlier, but found no prejudice and offered ANI the opportunity to question Levy outside the presence of the jury. Had it accepted that offer, ANI could have prepared for trial or demonstrated prejudice to the court. In any event, there is no indication that ANI was not completely familiar with the issues and the substance of the testimony to be offered.

We conclude that the superior court did not abuse its discretion in denying ANI's motions to continue.

### C. *Denial of ANI's Motion to Sever*

Civil Rule 18(a) provides that "[a] party asserting a claim ... may join ... as many claims either legal or equitable or both as the party has against an opposing party." Alaska R. Civ. P. 18(a). Civil Rule 42(b), however, provides that a court may order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Alaska R. Civ. P. 42(b).

ANI moved to sever the eight claims and for separate trial of each claim, arguing that evidence offered about any one transaction would be inadmissible character evidence under Evidence Rule 404 with respect to the other transactions.[14] The superior court denied the motion, and ANI appeals.[15]

Evidence Rule 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the

---

13. ANI has not appealed the denial of its motion to limit Dawkins's testimony.

14. The second amended complaint originally described nine transactions. It is unclear when the claim regarding the Nielson transaction was

dropped, but it was not included in the jury instructions.

15. We review a trial court's refusal to sever claims for an abuse of discretion. *Miller v. Sears*, 636 P.2d 1183, 1192 (Alaska 1981).

person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ANI's argument fails for several reasons. First, the evidence of any given transaction was not offered for the "sole purpose" of showing that ANI acted in conformity with some bad character trait. Evidence relating to the sale of the 1991 Escort to the McCormicks, for example, was offered to show that ANI sold the Escort in violation of AS 45.50.471.

Second, any prejudice to ANI was limited by Jury Instruction 18, which read:

The state has alleged several different violations of the Unfair Trade Practices and Consumer Protection Act in connection with each of eight transactions. You are to decide whether Anchorage Nissan committed each violation claimed on its own merits, separately from the other violations claimed. Thus, if you find that it is more likely than not that Anchorage Nissan, Inc. committed any specific violation in connection with any of the eight transactions, you must find that Anchorage Nissan committed an unfair or deceptive act or practice as to that specific violation. If you do not find that it is more likely than not that a specific violation occurred, then you must find that Anchorage Nissan, Inc. did not commit a deceptive act or practice with regard to that particular claim. If you find that Anchorage Nissan, Inc. committed one or more violations, you may not assume that it is more likely that Anchorage Nissan, Inc. committed other violations. This is called "propensity" evidence, and it is forbidden under Alaska law. When deciding a particular claim, however, you may consider evidence relating to other violations to decide whether Anchorage

Nissan, Inc. had any specific intent, plan, or motive in connection with the particular transaction under consideration.

Third, the primary relief sought by the State was a permanent injunction preventing ANI from continuing *any* deceptive practices. The civil fines were $64,000, and these were determined by the trial judge, not the jury. This is not a case in which inflammatory propensity evidence caused an excessive punitive damage award.

For these reasons, we hold that the trial court did not abuse its discretion in denying ANI's motion to sever.[16]

### D. *Refusal to Allow Cross–Examination of Gibbons Relating to His Termination*

■ ANI argues that the court erred when it granted the State's motion to prevent ANI from cross-examining Gibbons on the reasons ANI terminated his employment. ANI argues that this evidence was relevant to Gibbons's motive to lie as a witness at trial.[17]

Evidence of bias or interest on the part of a witness is admissible for the purpose of impeaching the witness's credibility. Alaska R. Evid. 613(a). ANI claims that Gibbons was fired for lying to a customer. The jury should have been allowed to hear that evidence in order to evaluate his credibility.

Nevertheless, we affirm the trial court's ruling for several reasons. First, ANI has not followed Alaska Appellate Rules 210 and 212. Appellate Rule 210(c) requires that the appellate excerpt of record contain "other orders or rulings sought to be reviewed." Alaska R.App. P. 210(c)(2). ANI failed to include in the excerpt the court order preventing ANI from cross-examining Gibbons. ANI's briefs contain no citation to the record for the court order, and its opening brief

---

**16.** On appeal, ANI also argues that the evidence was irrelevant under Evidence Rule 403 as to each of the other claims. We need not consider an argument not raised below, except where plain error has been committed. *In re L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986). ANI failed to raise this argument below, and no injustice has been committed.

**17.** The trial court's decision to disallow evidence relating to Gibbons's termination is reviewable for an abuse of discretion. *Hutchins v. Schwartz*, 724 P.2d 1194, 1197 (Alaska 1986); *Alaska Northern Dev., Inc. v. Alyeska Pipeline Service Co.*, 666 P.2d 33, 42 (Alaska 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984).

notes that the "motion, opposition, and order have been misplaced so are not part of the excerpt." ANI could have supplemented the excerpt when it realized the omission. Alaska R.App. P. 210(c)(3). It did not. The record is very large in this case, consisting of 3,300 numbered pages. The transcript consists of 1,939 pages. The appellate excerpts alone total 1,436 pages. ANI has also failed to comply with Appellate Rule 212(c)(8)[c], which states, "Appellant's brief shall indicate the pages of the record where each point on appeal was raised in the trial court." Alaska R.App. P. 212(c)(8)[c]. Given the clarity of these rules, we are not willing to assume that the error was prejudicial.

Second, ANI has not explained how it was prejudiced. Gibbons testified about transactions involving the 1985 S-10 Blazer. ANI simply asserts that "[i]t became prejudicial error when the jury [verdict] was rendered." ANI has not identified what parts of Gibbons's testimony would have been less persuasive to the jury if ANI could have impeached his credibility by showing he had a motive to lie.

Assuming there was any error, ANI has not demonstrated how it was prejudiced.[18]

### E. *Evidence Relating to "Post–Incident Activity" and the 1992 Blazer*

■ After ANI repurchased the 1992 Blazer from John Denis, it consigned the vehicle to Reliable Auto Sales. While the Blazer was in Reliable's used car lot, the words "salvage only" were written on a buyer's guide in the Blazer's window. The court denied ANI's motion to exclude evidence relating to post-incident conduct. ANI argues that the evidence of the "salvage only" sign should have been excluded under Evidence Rules 402, 403, 404, 405, and 407.[19]

ANI claimed below that Evidence Rule 404 barred admission of the buyer's guide. ANI's motion anticipated that the State would proffer evidence that ANI "did not issue a warning or otherwise recall" the vehi-

cle. ANI's motion cited a case holding that post-accident conduct of failing to recall a product was inadmissible under Evidence Rules 404 and 405 to show actions in conformity with character. *American Nat'l Watermattress Corp. v. Manville*, 642 P.2d 1330, 1336 (Alaska 1982) (holding that the error was harmless).

The State inferred that ANI or its agent, Reliable Auto, had written "salvage only" on the vehicle, permitting the jury to find that ANI or its agent admitted the vehicle was unsafe. The evidence was that it was unknown who wrote those words, but the buyer's guide was inside the vehicle and was not accessible to many persons. The inference the State draws is not unreasonable, and thus this evidence is probative.

Apparently ANI asserted throughout trial that there was nothing wrong with the Blazer even after the Denises had returned the truck to ANI. Evidence that it was being sold only for salvage would go to the credibility of ANI's witnesses. It was consequently not impermissible character evidence. *See* Alaska R. Evid. 404, 405.

■ Finally, any possible error was harmless. The jury ultimately found that ANI committed unfair or deceptive acts in: failing to conduct a reasonable pre-sale inspection of the Blazer; selling it to the Denises without disclosing that it had been in an accident; misrepresenting that it had been privately owned and had not been a rental car; and representing that it had remaining factory warranty coverage. The buyer's guide may be relevant but does not seem prejudicial to ANI on any of these issues. Admission of the evidence was certainly not "inconsistent with substantial justice" under Civil Rule 61 such that reversal would be warranted. Alaska R. Civ. P. 61 (harmless error).

■ ANI now relies on Evidence Rules 402, 403, and 407, but it did not rely on those rules in the superior court. Issues not raised in the court below are ordinarily con-

---

**18.** Because we so hold, it is not necessary to decide whether ANI complied with Alaska Evidence Rule 403.

**19.** The trial court's admission of evidence is reviewed for abuse of discretion. *Hutchins*, 724 P.2d at 1197; *Alaska Northern Dev.*, 666 P.2d at 42.

sidered waived and will not be considered on appeal, except where plain error has been committed. *In re L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986). "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981). ANI has not demonstrated that admission of this evidence resulted in any injustice.[20]

### F. Denial of ANI's Motion for a Directed Verdict

■ ANI moved for a directed verdict on many of the claims in the State's complaint. It appeals the denial of this motion.[21] ANI's brief merely lists the provisions of the Act under which a violation was charged. ANI provides no substantive discussion of the issue, and instead asserts that its superior court motion "is incorporated by reference" because it is so long and detailed. This practice does not satisfy Appellate Rule 212(c)(1)[i], which requires that the appellant's brief contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor."

■ We need not consider arguments which a party on appeal merely adopts and incorporates by reference to its lower court memoranda. *Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1124 (Alaska 1996) (citing *Bidwell v. Scheele*, 355 P.2d 584, 587–88 (Alaska 1960)); *Brandon v. State*, 778 P.2d 221, 229 n. 1 (Alaska App.1989). Nothing about ANI's terse and cursory treatment of the issue on appeal suggests any reason to reverse. Moreover, ANI's reply brief makes

no attempt to rebut the State's substantive arguments on this issue.

ANI has not demonstrated on appeal that the evidence does not support the claims which were the subject of its motion. It has not established that reasonable persons could not differ. It was not error to deny ANI's directed verdict motion.

### G. Jury Instructions

■ ANI argues that several jury instructions were given in error.[22]

#### 1. Instructions 11 and 12

■ Jury Instruction 11 described "unfair or deceptive acts." Instruction 12 told the jury that ANI had a legal duty to make a reasonable inspection of every used vehicle it acquired for sale to the public.

ANI notes that it objected below to subparagraphs 9, 10, and 11 of Instruction 11 and to Instruction 12, asserting that they had no basis in statutory or case law. ANI's appeal brief makes no effort to show why these instructions were incorrect as a matter of law; it only mentions that ANI objected below. *See Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1376 n. 4 (Alaska 1995) (holding that the court will not consider a point on appeal because of insufficient briefing). ANI has not demonstrated that there was any prejudicial error.

#### 2. Instructions 20 through 29

■ Instructions 20 through 29 identified the State's nine claims against ANI, grouped by transaction.[23] ANI argues that the trial

---

**20.** ANI does not explain why it is raising issues not asserted in the trial court. "If the point on appeal was not raised in the trial court, the brief shall explain why the point is raised for the first time on appeal." Alaska R.App. P. 212(c)(8)[c].

**21.** This court reviews a motion for a directed verdict in the light most favorable to the non-moving party. *Moloso v. State*, 644 P.2d 205, 208 (Alaska 1982). A directed verdict is justified only if the evidence is such that fair-minded persons, in the exercise of reasonable judgment, could not differ. *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 723 (Alaska 1975) (citation omitted). Where the record shows evidence from which fair-minded jurors could reach differing

conclusions, the motion is properly denied. *Id.* (citation omitted).

**22.** Issues related to jury instructions present questions of law subject to our independent judgment. *Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 114 (Alaska 1992).

**23.** Instruction 20 read:

The following nine instructions identify for you the state's specific claims in connection with each transaction. In order to decide whether or not each of the claimed violations occurred, you must decide two things. First, you must decide if it is more likely than not that the *facts* claimed by the state actually happened. And,

court erred by allowing the jury discretion to go outside the "specific statutory violations" alleged in the complaint, and that the instructions "fail[ed] to connect to any allegation in the complaint." [24]

With respect to ANI's first argument, each claim in the second amended complaint included an allegation that ANI violated AS 45.50.471(a) in the relevant transaction. Subsection (a) generally outlaws unfair or deceptive acts or practices in the conduct of trade or commerce. Subsection (b) gives specific examples of acts or practices that would violate subsection (a), but subsection (c) makes it clear that the list is not exclusive.[25] ANI's argument amounts to a claim that the State should have been limited to the list in subsection (b). That argument is groundless. Subsection (a) is not limited to the examples listed in subsection (b).

We reject ANI's argument that the instructions are not closely connected with the allegations in the complaint. Instruction 11 gave the jury an understanding of unfair or deceptive acts or practices. Instructions 21 through 29 exactly track the second amended complaint with regard to the alleged facts. Instruction 20 told the jury how to apply the facts to the law. The instructions were clear.

The superior court committed no error in connection with the jury instructions.

## IV. CONCLUSION

We AFFIRM.

---

second, you must decide whether the facts you find to have been proved constitute an unfair or deceptive act under Instruction 11 and the legal concepts explained in Instructions 12–18....

**24.** ANI also claims that Instruction 22b violated due process because it differs from the State's complaint. This argument has no merit because Instruction 22b is substantially similar to the claim alleged in the complaint. ANI's cursory argument waives any alleged due process violation. *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1376 n. 4 (Alaska 1995).

**25.** AS 45.50.471(c) states:

The unlawful acts and practices listed in (b) of this section are in addition to and do not limit the types of unlawful acts and practices actionable at common law or under other state statutes.