Jeanette JOHNSON, d/b/a Le Pussycat
Lounge, Petitioner,

v.

John T. CURRAN, James Davis, Kermit T.
Davis, Oleg Popos, and John Mascorella,
d/b/a Jabberwock Band, Respondents.

No. 5593.

Supreme Court of Alaska.

Sept. 18, 1981.

M. Ashley Dickerson, M. Ashley Dicker-
son, Inc., Anchorage, for petitioner.

Sandra K. Saville and David Schmid,
Kay, Christie, Fuld, Saville & Coffey, An-
chorage, for respondents.

Before RABINOWITZ, C. J., and CON-
NOR, BURKE, MATTHEWS and COMP-
TON, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises out of a contract dispute between Le Pussycat Lounge and the Jabberwock Band. Apart from the exotic appellations adopted by the parties, the factual context presented by the case is unexceptional. Petitioner Jeanette Johnson, d/b/a Le Pussycat Lounge, executed an American Federation of Musicians' form contract engaging the Jabberwock Band to perform at her nightclub from November 23, 1977, through January 17, 1978. Johnson asserts she was promised by the leader of the Jabberwock Band, before she signed the contract, that the agreement could be terminated on two weeks' notice if the band didn't draw well. The two-week cancellation agreement was not included in the written contract.

The Jabberwock Band failed to draw patrons in accord with Johnson's expectations and the Jabberwock's negotiation stage puffs. In fact, Johnson asserts that the band "performed so poorly that business dropped off," to only ten to twelve patrons an evening. As a consequence Johnson, after the fourth week, gave two weeks' termination notice and subsequently fired the band. The Jabberwock Band then sued Johnson in district court for the amount due it for the remaining two weeks under the parties' written contract. Johnson, in turn, filed an answer in which she asserted an affirmative defense to the effect that the parties had orally amended the contract. Additionally, Johnson counterclaimed for damages based on the alleged false representation and fraud. These claims were apparently then consolidated with Johnson's third-party claim against the American Federation of Musicians, Local 650.

In district court the band moved for summary judgment on the ground that the written contract was unambiguous and that, under the contract's terms, it was entitled to judgment as a matter of law. The band further contended that evidence of the alleged antecedent oral two-week cancellation agreement was inadmissible under the parol evidence rule.[1] In response, Johnson argued that the parol evidence rule was inapplicable. The district court rejected Johnson's position, holding that the written contract was valid. The court entered partial summary judgment for the band on the basis of the executed written contract and directed, pursuant to Civil Rule 54(b), that final judgment to that effect be entered. The judgment was appealed to and affirmed by the superior court.

In this petition Johnson argues that the written contract was at best partially inte-

---

1. In *Kupka v. Morey*, 541 P.2d 740, 747–48 n.9 (Alaska 1975), we alluded to the contours and the underlying policies of the parol evidence rule in the following manner:

> The parol evidence rule as traditionally conceived is well stated by Professor Corbin:
> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

3 Corbin, Contracts § 573 at 357 (1960) (footnote omitted). *Accord* 4 Williston, Contracts § 631 at 951–53 (3rd ed. Jaeger 1961). The rule has been developed to effectuate two important policies. The first has its basis in the assumption that the written evidence is more accurate than human memory. *Masterson v. Sine*, 68 Cal.2d 222, 65 Cal.Rptr. 545, 436 P.2d 561, 564 (1968); *Garrett v. Ellison*, 93 Utah 184, 72 P.2d 449 (1937). By elevating this assumption to the level of a presumption of law, it renders contractual undertakings more certain when they are reduced to an integrated writing. *Zone Co. v. Service Transp. Co.*, 137 N.J.L. 112, 57 A.2d 562 (1948); *Tees v. Lee*, 234 Wis. 607, 291 N.W. 792 (1940). Secondly, it reduces the opportunities for innocent parties to be victimized by the fraud or perjury of others. *Masterson v. Sine*, 65 Cal.Rptr. at 548, 436 P.2d at 564; *In re Tomarchio*, 269 F. 400 (E.D.Mo.1920); *Bauer v. Monroe*, 117 Mont. 306, 158 P.2d 485, 489 (1945).

The rule, however, as interpreted by most courts is far from absolute and is subject to many well-established exceptions not relevant here. For instance, extrinsic evidence is admissible to interpret ambiguous or uncertain terms in a contract. *Day v. A&G Constr. Co., Inc.*, 528 P.2d 440 (Alaska 1974); *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1305 (Alaska 1972).

grated and therefore that extrinsic evidence regarding the antecedent oral termination agreement was admissible. Further, she asserts that even if parol evidence is inadmissible to vary, add to, or clarify the written agreement, the district court should have admitted the proffered parol evidence on the issues of promissory estoppel and fraudulent inducement. Johnson also contends that the contract in question is ambiguous concerning a material term and that the parol evidence is therefore admissible purposes of interpretation.[2]

The band concedes that parol evidence is generally held admissible if the written agreement is only partially integrated. It argues, however, that the subject contract is fully integrated and that "even where a document is only partially integrated, parol evidence may not ordinarily be used to alter or vary the written terms of the agreement." The band insists that since the contract contains an explicit provision dealing with the length of its engagement, evidence of a prior parol two weeks' cancellation agreement varies the written contract and would therefore be inadmissible even if the written contract were found to be only partially integrated. The band further contends that the doctrine of promissory estoppel is inapplicable because promissory estoppel is appropriate only where there has been a gratuitous promise and the issue of lack of consideration is raised as a defense to the enforcement of the promise. In regard to whether the evidence of the prior parol agreement was admissible to demonstrate

fraud in the inducement, the band asserts that the alleged statements of its leader were insufficient, as a matter of law, to establish fraud.

■ We will analyze the case on the three grounds presented, namely, promissory estoppel, the addition of a consistent term to the contract, and fraud. Concerning promissory estoppel, we agree with respondents that the rule has no applicability in the factual context presented in the instant case; promissory estoppel is a principle applicable to situations where a promise unsupported by consideration is sought to be enforced and thus has no direct relevance to the case at bar.[3]

■ As to the addition of a contract term not contained in the written document, the *Restatement (Second) of Contracts* § 239, Comment b (Tent. Draft No. 6, 1971), notes that whether a binding agreement is completely or partially integrated, it supersedes inconsistent terms of prior agreements. Evidence of a consistent additional term is admissible to explain or supplement an agreement unless the court determines that the agreement was completely integrated.[4] Here we conclude that the oral agreement proffered by Johnson is inconsistent with the unambiguous terms of the written contract in that it contradicts the written contract's provision for the anticipated duration of the Jabberwock's stay at Le Pussycat.[5] Even if the written contract is viewed as only partially integrated, parol evidence concerning an early termina-

---

2. On the basis of this latter argument Johnson concludes that since the parol evidence of a prior agreement providing for cancellation upon two weeks' notice should have come in, summary judgment in the band's favor was improper.

3. *See* 1A A. Corbin, Corbin on Contracts § 200 (1963); Restatement (Second) of Contracts § 90 (Tent. Draft No. 2, 1965).

4. *See* Restatement (Second) of Contracts § 242 (Tent. Draft No. 6, 1971). We need not determine whether the written agreement in this case is completely or only partially integrated, since our conclusion that the term sought to be added is inconsistent with the written contract renders that distinction irrelevant.

5. *See Davis v. Ferguson*, 111 Neb. 691, 197 N.W. 390 (1924) (held that where a written contract of employment was for a definite period, parol evidence of an agreement that employment should continue, or new employment should begin, after expiration of the year, was inadmissible); *Baltimore Baseball Club & Exhibition Co. v. Pickett*, 78 Md. 375, 28 A. 279 (1894) (held that "custom and usage" evidence of an employer's right to discharge on ten days' notice was inadmissible, since it was inconsistent with the terms of a contract which specified a duration of one year and was silent on early termination).

tion right based on Johnson's dissatisfaction with the band's drawing power is inconsistent with the parties' written contract specifying a definite time without mention of any right of early termination, and thus would be inadmissible. *Kupka v. Morey,* 541 P.2d 740, 747–48 (Alaska 1975).

We now turn to Johnson's argument that the parol evidence in question was admissible to show the band's fraud in inducing her to enter into the written contract. Initially we think it appropriate to note that parol evidence of the two-week cancellation agreement would be admissible on this ground even if the written contract is viewed as completely integrated.[6]

As to this issue of fraud, Johnson's position is that Jim Davis, a member of the band, falsely asserted that he was the band leader and that Davis promised that she could terminate the contract with two weeks' notice if the band failed to generate sufficient business.[7] In an affidavit filed by Johnson in opposition to the band's motion for summary judgment, she averred in part that Jim Davis approached her concerning the possibility of giving him and some other musicians a break, and went on to state:

> I explained to him that I could not take on a band for a long period and that it would have to depend on how the crowd turned out. He stated that this would make no difference but he was sure that he and his group could bring in the crowd but that any time a two week notice would be all that would be needed and they would immediately leave.... I am sure he would admit that he had promised me that if I would give them a chance that they would prove themselves and that if they did not bring in the crowd I would not be stuck with them as a two weeks' notice would be all that

they would require. In view of having done business with Mr. Davis before, I had felt that I could trust him. He had misrepresented to me that he was the leader of the band. I did not notice until later that someone else had signed as the leader of the band and he had signed only as a member. He has refused to ever confront me or to even discuss the promise that we made each other. I believe that he used the fraudulent inducement to get into the club with the full knowledge of the other members since I had dealt with him before and I do not believe that I should be penalized for his fraud.

A party seeking to avoid enforcement of a contract on the ground of misrepresentation must show four things:

> First, there must have been a misrepresentation. Second, the misrepresentation must have been either fraudulent or material. Third, the misrepresentation must have induced the recipient to make the contract. Fourth, the recipient's reliance on the misrepresentation must have been justified.

*Restatement (Second) of Contracts* §§ 301–15, Introductory Note (Tent. Draft No. 11, 1976). *See Cousineau v. Walker,* 613 P.2d 608, 611–12 (Alaska 1980). Even drawing all inferences in favor of Johnson, as we must in reviewing the entry of summary judgment against her, *Nizinski v. Golden Valley Electric Association, Inc.,* 509 P.2d 280, 283 (Alaska 1973), we perceive no error in the district court's entry of summary judgment on this ground.

In light of Johnson's affidavit, it must be assumed that Davis falsely represented himself as the leader of the Jabberwock Band and that he made the promise

---

6. Restatement (Second) of Contracts § 240(d) (Tent. Draft No. 6, 1971); 3 A. Corbin, Corbin on Contracts § 580 (1960).

7. In the statement of genuine issues filed in *opposition to the band's motion for summary* judgment, Johnson listed in part the following:
   1. Was the contract induced by fraud?

2. At the time of making the promise to accept two weeks' notice if the band was not successfully bringing in crowds, did plaintiff Davis know, or should he have reasonably known, that such a promise was fraudulent and would not be kept?
   3. Did Davis represent to the defendant that he was the leader of the band and had the authority to contract for the band?

regarding cancellation of the contract on two weeks' notice. The argument based on Davis's claim that he was the band's leader can be disposed of summarily: no evidence has been produced from which it can be inferred that this statement induced Johnson to enter into the contract. *See Restatement (Second) of Contracts* § 309 (Tent. Draft No. 11, 1976). The second argument, based on Davis's alleged promise that the band's engagement could be cancelled on two weeks' notice, must fail for the same reason. Even granting that failure to warn a party of his possible misapprehension of a contract term may constitute a misrepresentation,[8] we are unable to conclude that Johnson may have been passively misled in that fashion. She fails to assert any assumption on her part that the written agreement embodied the purported oral promise. No evidence was presented from which it can be inferred either that she failed to read the contract or, having read it, failed to understand its terms. Her affidavit indicates neither that she in any way misapprehended the content of the written agreement nor that she was induced to sign it by any deception, active or passive, on Davis's part. Absent any evidence that Johnson was induced to enter into the contract on the basis of a misrepresentation as to the terms it contained, the district court was correct in granting summary judgment in favor of the band on this ground.

We agree with the district court's conclusion that Johnson's evidence, even interpreted in the light most favorable to her, was insufficient to support her defenses to enforcement of the written contract. That court's entry of summary judgment in favor of the band members must therefore be AFFIRMED.

8. Restatement (Second) of Contracts § 301 (Tent. Draft No. 11, 1976) defines a misrepresentation as "an assertion that is not in accord with existing facts." Section 303 provides that:

> A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist only if
>
> .    .    .    .    .
>
> (b) he knows that disclosures of the fact would correct a mistake of the other party as to a basic assumption on which that party made the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing, or
> (c) he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part . . . .

This section is clarified in Comment e as follows:

> *Known mistake as to a writing.* One party cannot hold the other to a writing if he knew that the other was mistaken as to its contents or as to its legal effect. He is expected to correct such mistakes of the other party and his failure to do so is equivalent to a misrepresentation which may be grounds either for avoidance under § 306 or for reformation under § 308. . . . The failure of a party to use care in reading the writing so as to discover the mistake may not preclude such relief (§ 314). In the case of standardized agreements, these rules supplement that of § 237(d), which applies, regardless of actual knowledge, if there is reason to believe that the other party would not manifest assent if he knew that the writing contained a particular term. Like the rule stated in Clause (b), that stated in Clause (c) requires actual knowledge and is limited to non-disclosure by a party to the transaction.