778 P.2d 581 (1989)
ALASKA DIVERSIFIED CONTRACTORS, INC., and Fischbach & Moore of Alaska, Inc., d/b/a Alaska Diversified-Fischbach, a joint venture of Alaska Corporations, Appellant, Cross-Appellee,
v.
LOWER KUSKOKWIM SCHOOL DISTRICT, Appellee, Cross-Appellant.
Nos. S-2508, S-2514.
Supreme Court of Alaska.
July 28, 1989.
*582 R. Everett Harris, Jensen, Harris & Roth, Anchorage, and Stuart G. Oles, Arthur D. McGarry, and Douglas S. Oles, Oles, Morrison & Rinker, Seattle, Wash., for appellant/cross-appellee.
Saul R. Friedman, Hedland, Fleischer, Friedman, Brennan & Cooke, Anchorage, and Stephen L. Nourse and John P. Griffin, Carney, Stephenson, Badley, Smith, Mueller & Spellman, P.S., Seattle, Wash., for appellee/cross-appellant.
Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION
MATTHEWS, Chief Justice.
On remand after our decision in Lower Kuskokwim School District v. Alaska Diversified Contractors, Inc., 734 P.2d 62 (Alaska 1987), both parties moved for judgment. After reviewing the memoranda of the parties and hearing oral argument, the trial court dismissed with prejudice the claims of Alaska Diversified Contractors and Fischbach & Moore (ADF) and entered judgment in favor of the school district in the amount of the counterclaim allowed by the jury, $113,495, plus interest, costs and attorney's fees, less a stipulated offset of $104,500. ADF appeals.
ADF contends that the trial court erred in failing to enter judgment in its favor on a theory of promissory estoppel or, in the alternative, failing to order a new trial on that theory. In addition, ADF argues that this court should reconsider its prior decision.

*583 A. Reconsideration of Prior Decision

We turn first to the contention that our prior decision should be reconsidered. The underlying facts are as follows:
The relevant contracts called for ADF to build several schools for the School District. At trial, the central dispute was over when completion was required.
The contracts state on their face that completion was required by August 31, 1980. ADF, however, presented evidence that the School District told ADF during a pre-bid conference it could actually complete construction up to eleven months later and that this was the purpose behind a contract provision which imposes only nominal liquidated damages for the first eleven months after August 31.
After work began, the School District pressured ADF to complete the schools by August 31, 1980. ADF employees testified that they did accelerate the work pace in response to this pressure. ADF seeks compensation for its costs resulting from what it perceives as this unwarranted acceleration.
Lower Kuskokwim, 734 P.2d at 63.
We held that the contracts were integrated and that therefore they could not be varied by prior negotiations or agreements. Id. at 64. It followed that the school district did not breach the contracts by requiring compliance with the August 31 deadline. We therefore reversed the judgment in favor of ADF and remanded for a disposition consistent with the opinion. Id.
ADF now requests that we overrule this decision primarily because (1) it is contrary to "an overwhelming body of Alaska precedent which had as a practical matter rendered the parol evidence rule a dead letter in Alaska," and (2) this court should not have determined that the contracts were integrated.
Our scope of review on the question of reconsideration is narrow. The doctrine of law of the case generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case. Wolff v. Arctic Bowl, Inc., 560 P.2d 758, 763 (Alaska 1977). Former decisions will not be reconsidered absent "exceptional circumstances," Patrick v. Sedwick, 413 P.2d 169, 173 (Alaska 1966), a term which refers to clear error constituting a manifest injustice. White v. Higgins, 116 F.2d 312, 317 (1st Cir.1940).
No such circumstances appear in this case. ADF's argument that our decision was contrary to an overwhelming body of precedent which had made the parol evidence rule a dead letter in Alaska reveals a fundamental misunderstanding of the parol evidence rule.
ADF cites a number of cases "typified" by Wright v. Vickaryous, 598 P.2d 490, 497 (Alaska 1979), which hold that extrinsic evidence can be utilized in determining the meaning of a contract.[1] ADF evidently believes that the fact that extrinsic evidence can be utilized in determining the meaning of a contract means that the parol evidence rule is inoperative. This belief is mistaken.
The parol evidence rule is a rule of substantive law which holds that an integrated written contract may not be varied or contradicted by prior negotiations or agreements. Before the parol evidence rule can be applied, three preliminary determinations must be made: (1) whether the contract is integrated, (2) what the contract means, and (3) whether the prior agreement conflicts with the integrated agreement.[2]Alaska Northern Dev., Inc. *584 v. Alyeska Pipeline Serv. Co., 666 P.2d 33, 37-40 (Alaska 1983), cert. denied, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). Extrinsic evidence may always be received on the question of meaning.[3]Alyeska Pipeline Serv. Co. v. O'Kelley, 645 P.2d 767, 771 n. 1 (Alaska 1982). Once the meaning of the written contract is determined, however, the parol evidence rule precludes the enforcement of prior inconsistent agreements. Alaska Northern, 666 P.2d at 37.
ADF's contention that the parol evidence rule had become ineffective in Alaska is particularly untenable in light of Alaska Northern, where we explicitly recognized that in determining the meaning of a contract prior to the application of the parol evidence rule, extrinsic evidence should be consulted.[4]Id.
This is not to say that the parol evidence rule is easy to apply. There is an obvious tension between using extrinsic evidence of a prior agreement for the purpose of determining the meaning of an integrated contract, and barring the use of a prior agreement to change an integrated contract once its meaning is determined. The evidence which is consulted to determine meaning may be the same evidence which is later excluded, or rendered irrelevant, by the parol evidence rule. However, this apparent conflict is made manageable in most cases by various practical rules. For example, while extrinsic evidence should be consulted in determining the meaning of a written contract, nonetheless "after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention." Restatement (Second) of Contracts § 212 comment b. Further, questions of interpretation of the meaning of written documents are treated as questions of law for the court except where they are dependent for their resolution on conflicting extrinsic evidence. O'Kelley, 645 P.2d at 771 n. 2; Restatement (Second) of Contracts § 212, comments d, e. The question of the meaning of a written contract, including a review of the extrinsic evidence to determine whether any of the extrinsic evidence is conflicting, is a preliminary question for the court. Where there is conflicting extrinsic evidence the court, rather than the jury, must nonetheless decide the question of meaning except where the written language, read in context, is reasonably susceptible to both asserted meanings. Alaska Northern, 666 P.2d at 39.
ADF's argument that this court could not have determined that the contracts were integrated also lacks merit. As we stated in our prior opinion, that question is one for the court. Lower Kuskokwim, 734 P.2d at 63. See also Mitford v. de Lasala, 666 P.2d 1000, 1004 (Alaska 1983); Alaska Northern, 666 P.2d at 37; Restatement (Second) of Contracts § 209(2) & comment c. It is a question which this court is as well situated to decide as the trial court.[5] ADF's contention that by so *585 ruling this court unconstitutionally deprived it of the opportunity to be heard as to the issue of integration lacks merit. ADF presented its arguments to this court. The evidence which would prove or disprove integration was admitted at trial for the purpose of proving the existence of a prior inconsistent agreement. The thrust of ADF's argument below was that the parties intended the prior agreement to survive the execution of the contract.
ADF also stresses the absence of an integration clause in the contracts.[6] However, the "Instructions to Bidders" form supplied to ADF contains a clause which is functionally equivalent to an integration clause. It deals specifically with pre-bid oral instructions:

Explanation to Bidders. Any explanation desired by bidders regarding the meaning or interpretation of the drawings and specifications must be requested in writing and with sufficient time allowed for a reply to reach them before the submission of their bids. Oral explanations or instructions given before the award of the contract will not be binding. Any interpretation made will be in the form of an addendum to the specifications or drawings and will be furnished to all bidders and its receipt by the bidder shall be acknowledged.
(Emphasis added). The terms of this clause highlight the correctness of the ruling that these contracts were integrated. They were publicly bid contracts whose terms could not be modified materially except in a formal fashion, so that all those interested in obtaining the contract would be treated equally.[7]
We also reject as insubstantial ADF's remaining arguments as to reconsideration. Exceptional circumstances do not exist, thus the law of the case doctrine precludes reconsideration.

B. Promissory Estoppel

ADF contends that on remand the trial court should have entered judgment in its favor based on promissory estoppel. Alternatively, it contends that the court should have ordered a new trial based on this theory. Promissory estoppel resulted, according to ADF, from the School District's representations prior to signing the contracts and ADF's resulting detrimental reliance. In effect, ADF contends that although parol evidence cannot be admitted to contradict the contracts, the same evidence may be admitted in order to show an enforceable promise supported by detrimental reliance.
ADF's promissory estoppel theory necessarily is controlled by this court's prior finding that the contracts at issue are integrated. Just as the parol evidence rule renders inoperative prior agreements based on consideration, it discharges prior agreements based on detrimental reliance. Peoples Nat'l Bank v. Bryant, 774 F.2d 682, 684 (5th Cir.1985); Ansam Assoc., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 447 (2d Cir.1985); Philadelphia Mfgs. Mut. Ins. Co. v. Gulf Forge Co., 555 F. Supp. 519, 522 (S.D.Tex. 1982).[8] In Johnson v. Curran, 633 P.2d 994, 996 (Alaska 1981), we noted that "promissory estoppel is a principle applicable to situations where a promise unsupported by consideration is sought to be enforced... ." Since the promise in Johnson was supported by consideration  the agreement by the promisee  we held that promissory estoppel bore "no direct relevance to the case at bar," id., and treated the promise in question as barred by the parol evidence rule. The factual situation in the present case is parallel to that present in Johnson, and the *586 same result is indicated. The trial court correctly rejected ADF's argument.
AFFIRMED.
NOTES
[1] Other cases cited by ADF include Mitford v. de Lasala, 666 P.2d 1000 (Alaska 1983); McMillan v. Anchorage Community Hosp., 646 P.2d 857 (Alaska 1982); Peterson v. Wirum, 625 P.2d 866 (Alaska 1981); Wessels v. State, Dep't of Highways, 562 P.2d 1042 (Alaska 1977); National Bank of Alaska v. J.B.L. & K., Inc., 546 P.2d 579 (Alaska 1976).
[2] Comment b to § 213 of the Restatement (Second) of Contracts (1981) states:

Whether a binding agreement is completely integrated or partially integrated, it supersedes inconsistent terms of prior agreements. To apply this rule, the court must make preliminary determinations that there is an integrated agreement and that it is inconsistent with the term in question... . Those determinations are made in accordance with all relevant evidence, and require interpretation both of the integrated agreement and of the prior agreement. The existence of the prior agreement may be a circumstance which sheds light on the meaning of the integrated agreement, but the integrated agreement must be given a meaning to which its language is reasonably susceptible when read in light of all the circumstances.
[3] Restatement (Second) of Contracts § 214 comment b states:

Words, written or oral, cannot apply themselves to the subject matter. The expressions and general tenor of speech used in negotiations are admissible to show the conditions existing when the writing was made, the application of the words, and the meaning or meanings of the parties. Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances are disclosed. In cases of misunderstanding, there must be inquiry into the meaning attached to the words by each party and into what each knew or had reason to know.
[4] Alaska Northern was decided less than a year prior to the trial in the present case.
[5] See Restatement (Second) of Contracts § 212 comment d:

Likewise, since an appellate court is commonly in as good a position to decide such questions as the trial judge, they have been treated as questions of law for purposes of appellate review. Such treatment has the effect of limiting the power of the trier of fact to exercise a dispensing power in the guise of a finding of fact, and thus contributes to the stability and predictability of contractual relations.
[6] An example of an integration clause appears in Kupka v. Morey, 541 P.2d 740, 748 n. 14 (Alaska 1975): "No representations, warranties, promises, guarantees or agreements, oral or written, expressed or implied, have been made by either party hereto with respect to this lease ... except as expressly provided herein."
[7] See Kenai Lumber Co., Inc. v. LeResche, 646 P.2d 215, 221 (Alaska 1982); McKinnon v. ALPETCO, 633 P.2d 281, 287 (Alaska 1981).
[8] Contra Ehret Co. v. Eaton, Yale & Town, Inc., 523 F.2d 280 (7th Cir.1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 186 (1976).