*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NAUTILUS MARINE ENTERPRISES, INC., | ) ) ) | Supreme Court No. S-14458 |
| | ) | Superior Court Nos. 3AN-07-10901 CI |
| Appellant, | ) ) | and 3AN-09-07869 CI (Consolidated) |
| v. | ) | O P I N I O N |
| | ) | |
| EXXON MOBIL CORPORATION and EXXON SHIPPING COMPANY, | ) ) ) | No. 6801 – July 19, 2013 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances:  Charles W. Coe, Law Offices of Charles W. Coe, Anchorage, for Appellant.  John Clough III, Clough & Associates, P.C., Auke Bay, for Appellee Exxon Mobil Corporation.  Douglas J. Serdahely and Barat M. LaPorte, Patton Boggs LLP, Anchorage, for Appellee Exxon Shipping Company.  Carla J. Christofferson and Dawn Sestito, O'Melveny & Myers LLP, Los Angeles, California, for Appellees.

Before: Fabe, Chief Justice, Carpeneti and Stowers, Justices. [Winfree, Justice, not participating.]

STOWERS, Justice.

## I. INTRODUCTION

In September 2006 Exxon Mobil Corporation and Exxon Shipping Company (collectively "Exxon") entered into a Settlement Agreement with two seafood processors, Nautilus Marine Enterprises (Nautilus) and Cook Inlet Processing (Cook Inlet). The agreement contained the following language: "Exxon and the Seafood Processors agree that the issue of the correct rate of prejudgment interest in this case shall be submitted to the [United States] District Court for resolution and entry of an appropriate judgment . . . ." It also noted that the "Final Judgment shall be in the same form as Exhibit A to this Settlement Agreement."

The parties disputed whether the Settlement Agreement required interest to be compounded annually, or whether the federal District Court was free to award simple or compound interest at its discretion.

Exxon filed an action in the Alaska Superior Court seeking a declaratory judgment construing the Settlement Agreement. The superior court found that the parties did not intend that prejudgment interest had to be compounded annually, but rather that they intended to reserve this issue for the District Court to decide. Because the superior court's interpretation of the Settlement Agreement was not clearly erroneous, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts And Proceedings Concerning The Settlement Agreement

The September 2006 Settlement Agreement was intended to resolve a lawsuit by Nautilus and Cook Inlet against Exxon in the United States District Court for the District of Alaska. The underlying lawsuit related to the 1989 Exxon Valdez oil spill. An important issue in dispute between the parties was how to calculate prejudgment interest that would be payable on damages that Nautilus and Cook Inlet suffered as a result of the spill. In two similar cases, the District Court had previously ruled that federal law would govern the calculation of prejudgment interest under

28 U.S.C. § 1961.[1]  That statute sets the Treasury bill rate ("T-bill rate") as the default rate for prejudgment interest, although the court has the power to vary the rate if the equities of a particular case demand it.  The statute expressly provides that interest shall be "compounded annually."[2]

In June 2006 Nautilus and Cook Inlet filed a motion in the District Court prepared by their attorney, Phillip Paul Weidner, arguing that the Alaska state prejudgment interest rate of 10.5% should apply to their case, rather than the federal T-bill rate that the District Court had applied in the previous cases.  The Alaska prejudgment interest statute in effect at the time of Nautilus's and Cook Inlet's damages in 1992 and 1993 provided that prejudgment interest was 10.5% per annum unless otherwise provided for in a contract or agreement.[3]  Decisions applying former AS 09.30.070(a) had held that in the absence of an agreement to the contrary, the method of computing interest under the statute was "simple interest."[4]  The motion argued that Alaska's prejudgment interest statute should apply because Nautilus's and Cook Inlet's underlying claims were based on state law.  In the alternative, the motion argued that the District Court should apply a federal rate "compounded annually."

Meanwhile, Weidner initiated settlement negotiations with John Daum, negotiator and outside counsel for Exxon.  In a letter to Daum in July 2006, Weidner discussed the applicable prejudgment interest rate, noting that it would be necessary to

---

[1]  Order No. 369, *In re Exxon Valdez*, A89-0095-CV (HRH), 2005 WL 936934 (D. Alaska Apr. 12, 2005), *rev'd and remanded*, 484 F.3d 1098 (9th Cir. 2007); Order No. 299, *In re Exxon Valdez*, A89-0095-CV (HRH) (D. Alaska Sept. 21, 1995).

[2]  28 U.S.C. § 1961(b) (2006).

[3]  Former AS 09.30.070(a) (1996) (amended 1997).

[4]  *State v. Doyle*, 735 P.2d 733, 741-42 (Alaska 1987); *Alyeska Pipeline Serv. Co. v. Anderson*, 669 P.2d 956-57 (Alaska 1983).

conduct "an analysis of whether the treasury T-bill rate will be used and compounded, whether the Alaska 10.5% simple rate will be used, or whether the federal lending rate will be used and compounded." Weidner also provided Daum a list of interest calculations he had formulated using compound interest when applying federal rates and simple interest when applying the Alaska rate of 10.5%.

In a September 2006 letter, Weidner proposed to Daum that the parties settle the principal amount of damages and allow District Court Judge Russel Holland to resolve the issue of the "computation and assessment of prejudgment interest," subject to appeal to the United States Court of Appeals for the Ninth Circuit. Daum responded by drafting a Letter Agreement that was intended to set forth the basic terms of the settlement consistent with the substance of Weidner's letter. The Letter Agreement stated that Exxon would pay prejudgment interest "as provided by law" and explained that "Exxon contends that the correct rate of pre-judgment interest in this case is 4.11% on damages accrued in 1992 and 3.54% on damages accrued in 1993," consistent with the Treasury bill rates for those years, while Cook Inlet and Nautilus contend that "higher rates of pre-judgment interest apply." The Letter Agreement provided that the District Court would determine the "correct rate of prejudgment interest," and that both parties preserved their rights to appeal to the Ninth Circuit. Finally, the Letter Agreement provided that the parties would execute a formal settlement agreement to implement the provisions of the Letter Agreement. On September 14, 2006, Weidner countersigned the Letter Agreement, indicating that "a settlement on this basis is agreeable to [his] clients." In testimony, Daum and Weidner agreed that at the time they signed the Letter Agreement, Daum had made no "specific representation" that Exxon would pay compound interest in all circumstances.

From the signing of the Letter Agreement on September 14 until September 18, 2006, when Daum transmitted a first draft of the Settlement Agreement

to Weidner, the parties did not have any substantive discussions. After minor modifications to Daum's initial Settlement Agreement draft, the parties executed the final Settlement Agreement.

Closely following the wording of the Letter Agreement, the language of the Settlement Agreement regarding prejudgment interest read as follows:

> Exxon contends that the correct rate of pre-judgment interest in this case is 4.11% compounded annually on damages accrued in 1992 and 3.54% compounded annually on damages accrued in 1993. The Seafood Processors contend that higher rates of prejudgment interest apply. Exxon and the Seafood Processors agree that the issue of the correct rate of prejudgment interest in this case shall be submitted to the District Court for resolution and entry of an appropriate judgment, with all parties preserving rights of appeal to the Ninth Circuit from any adverse decision.

Paragraph 3.5 of the Settlement Agreement provided for the "entry in the Action of a Final Judgment," which "shall include the following provisions":

> 3.5.1 A dismissal with prejudice of all Claims of the Seafood Processors;
>
> 3.5.2 A full and final release and discharge of Exxon from all Claims by each of the Seafood Processors . . . ;
>
> 3.5.3 An order forever barring the parties identified in paragraph 3.5.2 from asserting, instituting, maintaining, prosecuting or enforcing any Claim against Exxon . . . ;
>
> 3.5.4 A reservation of jurisdiction over the Claims of the Seafood Processors against Exxon to enforce this Settlement Agreement and the Final Judgment.

The Settlement Agreement further stated that the Final Judgment "shall be in the same form" as an attached "(Proposed) Final Judgment" form marked as "Exhibit A" in the document. The first paragraph, or first recital, of Exhibit A included the following language, which is at the center of the current controversy:

> WHEREAS, in Order No. __, the Court determined that plaintiffs . . . were entitled to recover prejudgment interest from defendants . . . on 1992 damages **at the rate of __%, compounded annually**, and were entitled to recover prejudgment interest on 1993 damages **at the rate of __%, compounded annually** . . . . (Emphasis added.)

The "compounded annually" language was present in all drafts of Exhibit A to the Settlement Agreement exchanged by the parties, from Daum's first draft to the final version. Both Daum and Weidner agreed that during the drafting of the document the parties did not discuss the "compounding annually" language with each other.

Finally, the Settlement Agreement included an integration clause, which read as follows: "This Settlement Agreement, including the attached exhibit [A], is an integrated instrument that constitutes and contains the entire agreement among the Parties with regard to the subject matter hereof, and supersedes and replaces all prior negotiations and proposed agreements." The Agreement also provided that it "may not be altered, amended or modified in any respect" except by a writing signed by all parties. The Agreement stated that the parties entered into the Agreement "based upon equal bargaining power, with all Parties participating in its preparation" and that "the attorneys for each Party have had an equal opportunity to participate in the negotiation and preparation of this Settlement Agreement, and that its terms . . . shall not be interpreted in favor of or against any Party . . . ." The Agreement provided that it shall be interpreted "solely for the purpose of fairly effectuating the intent of the Parties."

### B. Post-Agreement Facts And Proceedings

On February 20, 2007, Nautilus and Cook Inlet filed separate motions in the District Court arguing that Judge Holland should award a higher amount of prejudgment interest than the Treasury bill figures that Exxon believed should apply.

Cook Inlet's motion was signed by Weidner; Nautilus's motion was signed by other counsel.

Nautilus's motion argued that the court should award prejudgment interest at a compounding rate of 10.5% based on "the average prime rate during the 1990's, the Alaska statutory rate, and also [Nautilus's] cost of interest and the rates charged to it." In the alternative, Nautilus argued that a rate of 8.5% compounding interest should apply, "commensurate with the average prime rate in the 1990s."

Cook Inlet's motion, signed by Weidner, argued that the Alaska state rate of 10.5% simple interest should apply or, in the alternative, a compound rate between 9.78% and 12.15% should apply. Weidner emphasized this distinction between state simple interest and federal compound interest in a reply brief that Cook Inlet submitted in April 2007. Using bolded lettering, Weidner wrote that "[Cook Inlet's] motion clearly states that '. . . the Court should rule that the interest rates **(other than Alaska statutory)** are compounded.'" Cook Inlet's reply brief also observed that "the Alaska Legislature has indicated that [the applicable] rate is 10.5% per year simple interest" and argued that in the instant case "[t]he Court should award simple prejudgment interest at 10.5% per year."

In a supplemental declaration filed in the District Court on April 20, 2007, Nautilus president M. Thomas Waterer stated his preference for 10.5% compounding interest but also proposed several alternatives to this rate. These alternatives included having Judge Holland award simple interest and interest compounding monthly.

On April 16, 2007, the Ninth Circuit held in a related case involving Sea Hawk Seafoods, Inc., that Alaska law — not federal law — supplies the rate of

prejudgment interest.[5]  Because this decision reversed Judge Holland's earlier rulings that federal law applied, he requested that the parties (Exxon, Nautilus, and Cook Inlet) file supplemental briefing addressing the *Sea Hawk* decision.  In their supplemental briefs, all parties agreed that the *Sea Hawk* decision dictated that the proper rate of prejudgment interest was the Alaska rate of 10.5%.  However, Exxon argued that prejudgment interest should be simple, while Nautilus and Cook Inlet argued that, pursuant to the language of Exhibit A of the Settlement Agreement, the parties had agreed that interest would be compound in all circumstances.

In July 2007 Judge Holland entered final judgment, ruling that Nautilus and Cook Inlet were to recover prejudgment interest at the 10.5% Alaska statutory rate, compounded annually.  In making this ruling, Judge Holland "did not receive or consider extrinsic evidence."  He found that because "[t]hat settlement agreement was an integrated instrument" he could not rely on the parties' pre-settlement dealings in interpreting the document.  Looking at the language of the document, Judge Holland found that the "proposed final judgment was expressly made part of the integrated settlement agreement" and that the proposed judgment "plainly states that interest, regardless of the rate the court puts in the blank, will be compounded."  Thus, "the parties agreed that any prejudgment interest should be compounded."

Exxon appealed this decision to the Ninth Circuit.  In March 2009 the Ninth Circuit ruled that Judge Holland "erred in failing to consider extrinsic evidence regarding whether the parties agreed to compound interest," and it remanded the case back to the District Court.[6]

---

[5]    *In re Exxon Valdez (Sea Hawk Seafoods, Inc. v. Exxon Corp.)*, 484 F.3d 1098, 1099 (9th Cir. 2007).

[6]    *In re Exxon Valdez (Polar Equipment, Inc. v. Exxon Mobil Corp.)*,

(continued...)

In June 2009 Exxon filed a complaint in Alaska Superior Court seeking to reform the Settlement Agreement and, in particular, "to delete the phrase 'compounded annually' in the two places where it appears in the First Recital of Exhibit A to the Settlement Agreement." In the alternative, Exxon sought a declaratory judgment to the effect that the Settlement Agreement "did not involve any agreement to pay compound interest if state law governed or to pay compound interest regardless of what law governed."

On remand from the Ninth Circuit, in September 2009 Judge Holland issued a stay of proceedings in the District Court in favor of the litigation in state court of both Exxon's contract reformation and contract interpretation claims. The District Court expressly retained jurisdiction of the parties' Settlement Agreement for purposes of entering a final judgment after state court proceedings had concluded.

Cook Inlet and Exxon settled before trial commenced in the superior court. Exxon's claims for declaratory relief and reformation with respect to the agreement with Nautilus came before the court in a non-jury trial on November 1-3, 2010. The superior court issued Findings of Fact and Conclusions of Law and entered a Final Judgment. The court found that the Settlement Agreement did not require Exxon to pay compound interest. Rather, the court found that the parties intended that Judge Holland would determine both the correct rate of interest and the method of computing interest under federal or state law. In light of these findings, the court concluded that reformation was not necessary. Finally, the court found that Exxon was the prevailing party.

Nautilus appeals.

---

[6](...continued)
318 F. App'x 545, 547 (9th Cir. 2009).

## III.   STANDARD OF REVIEW

When interpreting a contract, the goal "is to give effect to the reasonable expectations of the parties."[7]  "We review the interpretation of a contract de novo."[8] "Where the superior court considers extrinsic evidence in interpreting contract terms, however, we will review the superior court's factual determinations for clear error and inferences drawn from that extrinsic evidence for support by substantial evidence."[9]  A clearly erroneous finding is one which leaves us with "a definite and firm conviction on the entire record that a mistake has been made."[10]

"We review a trial court's prevailing party determination for abuse of discretion.  We will reverse a prevailing party determination only if it is arbitrary, capricious, manifestly unreasonable, or improperly motivated."[11]

---

[7]      *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012) (quoting *Knutson v. Knutson*, 973 P.2d 596, 600 (Alaska 1999)) (internal quotation marks omitted).

[8]      *Id.* (citing *Burns v. Burns*, 157 P.3d 1037, 1039 (Alaska 2007)).

[9]      *Id.* (quoting *Cook v. Cook*, 249 P.3d 1070, 1077-78 (Alaska 2011)) (internal quotation marks omitted); *see also Vokacek v. Vokacek*, 933 P.2d 544, 547 (Alaska 1997) (stating that when extrinsic evidence is presented at trial regarding interpretation of the parties' agreement "we are confined to determining whether the facts support the trial court's interpretation" (quoting *Fairbanks N. Star Borough v. Tundra Tours*, 719 P.2d 1020, 1025 (Alaska 1986))) (internal quotation marks omitted).

[10]      *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996) (internal quotation marks omitted).

[11]      *Taylor v. Moutrie-Pelham*, 246 P.3d 927, 928-29 (Alaska 2011) (internal footnotes omitted).

## IV. DISCUSSION

### A. The Superior Court's Interpretation Of The Settlement Agreement Was Not Clearly Erroneous.

Nautilus argues that the parol evidence rule should have prevented the superior court from considering extrinsic evidence to determine the meaning of the Settlement Agreement. The superior court concluded that although the parol evidence rule "generally precludes the parties from using evidence of prior agreements . . . to contradict the written terms," the court may consider extrinsic evidence when determining whether the contract is integrated and what the contract means. The superior court is correct. Extrinsic evidence is generally admissible to interpret the meaning of the language of a contract.[12] Once the meaning of a written contract has been determined, the parol evidence rule prohibits the enforcement of prior inconsistent agreements.[13]

#### 1. The superior court properly considered extrinsic evidence.

Nautilus contends that a court may bring extrinsic evidence to bear on the interpretation of a contract only after the court first finds an ambiguity in the contract. But we have long held that when reviewing contract disputes,

> [i]n order to give legal effect to the parties' reasonable expectations, the court must look first to the written agreement itself *and also to extrinsic evidence* regarding the parties' intent at the time the contract was made. The parties' reasonable expectations are assessed through resort to the language of the disputed provision and other provisions of

---

[12] *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 383 (Alaska 2004) (internal citations omitted).

[13] *See* AS 45.02.202; *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.*, 778 P.2d 581, 584 (Alaska 1989) (internal citations omitted).

the contract, *relevant extrinsic evidence*, and case law interpreting similar provisions.[14]

Extrinsic evidence is evidence "other than the language of the contract that bears on the parties' intentions."[15] The extrinsic evidence that may be considered includes "the language and conduct of the parties, the objects sought to be accomplished and the surrounding circumstances at the time the contract was negotiated," as well as the conduct of the parties after the contract was entered into.[16] Trial courts "have broad latitude in looking at extrinsic evidence."[17]

Extrinsic evidence "is always admissible on the question of the meaning of the words of the contract itself."[18] Accordingly, "[i]t is not necessary to find that an agreement is ambiguous before looking to extrinsic evidence as an aid in determining what it means."[19] We have expressly rejected the "artificial and unduly cumbersome" two-step process used in other jurisdictions in which "resort to extrinsic evidence can

---

[14] *Fairbanks N. Star Borough*, 719 P.2d at 1024 (emphasis added) (internal citations omitted).

[15] *Wright v. Vickaryous*, 598 P.2d 490, 497 n.22 (Alaska 1979).

[16] *Peterson v. Wirum*, 625 P.2d 866, 870 n.7 (Alaska 1981) (citations and quotation marks omitted).

[17] *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 257 (Alaska 1996).

[18] *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 383 (Alaska 2004); *see also Beal v. McGuire*, 216 P.3d 1154, 1166 (Alaska 2009) (observing that "in determining the meaning of an agreement courts should consider, in addition to its text, relevant extrinsic evidence, including the subsequent conduct of the parties").

[19] *Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162, 167 (Alaska 2007); *see also Beal*, 216 P.3d at 1166 (observing that "[c]ourts may consult extrinsic evidence without first finding that an agreement's words are ambiguous").

take place only after a preliminary finding of ambiguity."[20] In this two-step process, "a court would examine extrinsic evidence to make a preliminary finding of ambiguity, and only after such a finding, would the court consider extrinsic evidence in construing the contract."[21] By contrast, under Alaska law "a court in this jurisdiction may initially turn to extrinsic evidence in construing a contract" for "such light as it may shed on the reasonable expectations of the parties."[22] Such an approach has at least two benefits. First, an approach in which the courts "may hear all relevant circumstances bearing on the interpretation of a disputed term . . . should better enable them to attain the ultimate goal of interpreting the language in accordance with the reasonable expectations of the parties."[23] Second, this approach "eliminate[s] the lengthy and repetitious arguments as to whether a provision is ambiguous."[24] In sum, the trial court's duty "to consider the totality of the evidence, including extrinsic evidence," in resolving issues of contractual meaning "extends to all cases and requires no preliminary indication of ambiguity in the written agreement."[25]

Here, the superior court relied on several sources of extrinsic evidence to construe the meaning of the contract, including the exchange of letters and drafts

---

[20] *Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d 767, 771 n.1 (Alaska 1982).

[21] *Wright v. Vickaryous*, 598 P.2d 490, 497 n.22 (Alaska 1979).

[22] *Alyeska Pipeline Serv. Co.*, 645 P.2d at 771 n.1.

[23] *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1052 n.39 (Alaska 1977).

[24] *Id.*

[25] *Froines v. Valdez Fisheries Dev. Ass'n, Inc.*, 75 P.3d 83, 87-88 (Alaska 2003).

between Daum and Weidner, internal documents generated by Nautilus, and various motions and declarations submitted by Exxon, Cook Inlet, Nautilus, and Waterer. All of this evidence was admissible to construe the meaning of the Settlement Agreement. In addition to written extrinsic evidence, the court also relied on testimony by Daum, Weidner, and Waterer, among others. Nautilus takes issue with the court's reliance on Daum's testimony in particular, pointing out that we have held that "self-serving litigation-related expressions of prior subjective intent or understanding are generally not considered probative of parties' reasonable expectations when they entered into a contract; the court instead must look to express manifestations of each party's understanding."[26] This statement, however, "does not preclude a party from testifying about its understanding in objective terms . . . sufficiently detailed to enable [the] trier of fact to form its own judgment as to the reasonableness of the party's understanding and the likelihood that the other party would have the same understanding."[27] Indeed, "[t]here is nothing improper in such testimony."[28] Accordingly, the superior court did not err in relying on Daum's testimony in combination with other extrinsic evidence in seeking to understand the reasonable intent of the parties.

---

[26] *In re Estate of Fields*, 219 P.3d 995, 1012 n.57 (Alaska 2009); *see also Norville v. Carr-Gottstein Foods*, 84 P.3d 996, 1003 (Alaska 2004) (stating that "[t]estimony of a party as to his subjective intentions concerning the meaning of a particular clause in a contract is not probative unless the party in some way expressed or manifested his understanding at the time of contract formation").

[27] *In re Estate of Fields*, 219 P.3d at 1012 n.57 (quoting *Alaska Tae Woong Venture, Inc. v. Westward Seafoods, Inc.*, 963 P.2d 1055, 1067 (Alaska 1998)) (internal quotation marks and brackets omitted).

[28] *Alaska Tae Woong Venture, Inc.*, 963 P.2d at 1067.

**2.      The superior court did not violate the parol evidence rule**.

Nautilus also argues that the superior court "disregarded" or "violate[d]" the parol evidence rule by relying on extrinsic evidence to construe the Settlement Agreement.  As previously explained, Nautilus's argument reflects a misunderstanding of the parol evidence rule and its relationship to this court's principles of contract interpretation.

The parol evidence rule is codified in AS 45.02.202, which reads:

> Terms with respect to which the confirmatory memoranda of the parties agree, or that are otherwise set out in a writing intended by the parties as a final expression of their agreement with respect to the terms included in the writing, may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement, but may be explained or supplemented
>
>> (1) by course of performance, course of dealing, or usage of trade (AS 45.01.303); and
>>
>> (2) by evidence of consistent additional terms unless the court finds the writing was intended also as a complete and exclusive statement of the terms of the agreement.

Alaska case law provides additional guidance regarding this rule.  In *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim School District*, we explained that "[b]efore the parol evidence rule can be applied, three preliminary determinations must be made:  (1) whether the contract is integrated, (2) what the contract means, and (3) whether the prior agreement conflicts with the integrated agreement."[29]  This three-part process makes clear that before applying the parol evidence rule, "the court's first duty is to determine the meaning of the contract, and extrinsic evidence is admissible for this

---

[29]      778 P.2d 581, 583 (Alaska 1989) (internal citations omitted).

purpose."[30] This initial determination, as such, "does not involve the parol evidence rule at all, since the question is what the contract means."[31] Rather, it is only "[o]nce the meaning of the written contract [has been] determined" that the parol evidence rule operates to "preclude[] the enforcement of prior inconsistent agreements."[32]

Here, the superior court followed the procedure set forth by *Alaska Diversified Contractors* and initially determined — with the aid of extrinsic evidence — "what the contract means," namely, that the Settlement Agreement did not include an agreement to pay compound interest. Interpreted thus, there was no prior inconsistent agreement present and no conflict between the extrinsic evidence and the Settlement Agreement. There was therefore no occasion for the court to apply, much less violate, the parol evidence rule.

### 3. The court's interpretation of the Settlement Agreement was not clearly erroneous.

Relying on both the language of the Settlement Agreement and extrinsic evidence, the superior court found that the Settlement Agreement did not include an agreement to use compound interest regardless of whether state or federal law applied, but rather reserved the prejudgment interest issue for Judge Holland to decide. This finding was not clearly erroneous.

With respect to the language of the Settlement Agreement, the court found that nothing in the document's language limited Judge Holland's discretion to decide not only the numerical percentage of the interest, but also whether the interest would be simple or compound. On the contrary, the court found that the Settlement Agreement

---

[30] *Prichard v. Clay*, 780 P.2d 359, 362 (Alaska 1989).

[31] *Id.*

[32] *Alaska Diversified Contractors*, 778 P.2d at 584.

simply does not address the issue of simple or compound interest. In particular, the court observed that paragraph 3.5 of the Settlement Agreement, which states that the Final Judgment must contain certain provisions, does not mention an agreement to provide compound interest in all circumstances. Similarly, paragraphs 3.1, 3.2, and 3.3 carefully address the issue of prejudgment interest, but say nothing about an agreement to provide compound interest in all circumstances.

The court also considered the significance of Exhibit A, the Proposed Judgment form. The court concluded that "[t]he extrinsic evidence . . . demonstrates that the proposed judgment [Exhibit A] (including the first recital and [the] words 'compounded annually') was intended to provide a form of judgment that Judge Holland could use to implement the parties' agreement. The proposed judgment was not intended to include or be an agreement to pay compound interest." In other words, the court found that the Proposed Judgment form was "just that, a proposal for Judge Holland to use at his discretion."

The court acknowledged, however, that despite its own reading of the document, there "may be an 'ambiguity' " in the language of the Settlement Agreement regarding the use of compound interest only, particularly with respect to the language of Exhibit A and its recital of the phrase "compounded annually." Nevertheless, the court found that even if the document was ambiguous, the extrinsic evidence removed any ambiguity by confirming there was no agreement to pay compound interest. Again, extrinsic evidence is admissible to construe the Settlement Agreement whether or not there is an ambiguity. With respect to such extrinsic evidence, the court found that "[a]ll of the extrinsic evidence demonstrates that the parties never agreed that interest would be compounded." In making this finding, the court relied on the following sources of extrinsic evidence.

First, the superior court noted that in light of Judge Holland's previous rulings that federal law governed the award of prejudgment interest, the parties reasonably might have assumed that in their case Judge Holland would similarly award interest under the federal standard, which requires interest to be compounded. Thus the use of the phrase "compounded annually" in Exhibit A served as a prediction of what the court would do.

Second, the court considered the exchange of letters and drafts between Daum and Weidner, as well as their testimony regarding the negotiations. Having reviewed these, the court found there was "no evidence that the parties discussed and reached agreement that only compound interest would apply regardless of whether state or federal law controlled." Of particular importance here is the drafting and execution of the Letter Agreement, which is a binding memorialization of the parties' settlement. The Letter Agreement provided that Exxon will pay prejudgment interest "as provided by law" and contains no agreement that Exxon will pay compound interest in all circumstances. Accordingly, the Settlement Agreement that followed, which was intended to "implement the provisions" of the Letter Agreement, could not have implemented an agreement that did not exist.

Third, the court found that Nautilus's and Weidner's internal communications during the negotiation period confirmed their own understanding that prejudgment interest would be compound if federal law applied and simple if state law applied. In particular, the court found that the parties' internal communications consistently referred to simple interest under the Alaska statute and compound interest when applying federal rates, and never once calculated the 10.5% state rate as compounded. Further, even after Waterer saw the proposed judgment in the draft Settlement Agreement, he continued to direct his accountant to perform calculations of

Nautilus's potential recovery using simple interest under Alaska state law and compound interest under federal law.

At trial, Waterer testified to his understanding that any interest awarded would be compound because the award was intended to compensate Nautilus for the expenses it incurred after the oil spill, and Nautilus had to take out loans at very high rates. However, the superior court found "Mr. Waterer's credibility to be severely compromised and his testimony not believable. This court's impression of Mr. Waterer's testimony is that he was very careful in answering questions, approaching perjury but never committing it."

At his deposition before trial, Waterer produced a telephone log book with notes that purported to reflect conversations between Weidner and Waterer supporting the existence of an agreement by Exxon to pay compound interest. At trial, however, Waterer admitted that he added some of those notes after this dispute arose. As summarized by the superior court, "Mr. Waterer also admitted that it was possible that all the additions were related to compound interest and that the additions were made to assist [Nautilus's] litigation position in this case." The superior court also relied on the testimony of Exxon's expert witness, who testified to his belief that Waterer had removed pages from his personal notebooks. The court concluded that "Mr. Waterer's intentional destruction of pages from September 26 and/or 27, 2006 creates the inference that Mr. Waterer removed pages containing information harmful to [Nautilus's] legal position."

Finally, the court relied on evidence of the parties' post-settlement conduct. The court observed that in Weidner's post-settlement briefing on behalf of Cook Inlet, he was emphatic that, to the extent the Alaska statute governed, Cook Inlet was only seeking simple interest. This is significant because Weidner was the sole negotiator on behalf of Nautilus and Cook Inlet during the formulation and execution of the Settlement

Agreement. The fact that he acknowledged in post-settlement briefing that interest would not be compounded under the Alaska statute indicates that he did not believe the Settlement Agreement included an agreement to compound the interest in all circumstances. The court also observed that Nautilus "[n]otably" did not argue in its initial post-settlement briefing in February 2007 that the parties had agreed to compound interest in all circumstances. This indicates that Nautilus did not believe there was such an agreement at that time. Rather, as the superior court concluded, Nautilus first began to claim there was such an agreement in June 2007, long after the signing of the Settlement Agreement. Finally, the court found that the alternative proposals regarding prejudgment interest that Waterer submitted to the District Court in his April 2007 declaration "are all inconsistent with [Nautilus's] current position that there was an agreement to compound interest regardless, and [Nautilus's] position that the [proposed judgment form] constitutes the agreement." This confirms that both parties understood that the proposed judgment form allowed Judge Holland full discretion to assess prejudgment interest as provided by law.

Indeed, Nautilus concedes that its post-settlement conduct contradicts what it now claims was always its understanding of the agreement. Specifically, Nautilus's brief asserts that "[i]n this instance, the court is obligated to enforce the settlement even though the parties had left terms open and even when they mutually disregarded them after the time of settlement." But Nautilus does not explain why it would "disregard" the terms of the Settlement Agreement when — under the interpretation now urged by Nautilus — those terms clearly worked in its favor.

In sum, the superior court closely read the language of the Settlement Agreement and carefully considered a wide array of written and testimonial extrinsic evidence, including the parties' words and conduct before, during, and after the drafting of the Settlement Agreement. Having done so, the court found that "[a]ll of the extrinsic

evidence demonstrates that the parties never agreed that interest would be compounded." The court further concluded that the "extrinsic evidence also demonstrates that the proposed judgment (including the . . . words 'compounded annually') . . . was not intended to include or be an agreement to pay compound interest." Rather, the parties intended to reserve the prejudgment interest issue for Judge Holland to decide, and the parties understood that interest would be paid, in the words of the Letter Agreement, "as provided by law" — simple interest if Alaska law governed, compound interest if federal law governed. Having reviewed the entire record, we conclude that the superior court's interpretation of the agreement in light of the extrinsic evidence was not clearly erroneous.

B. **The Superior Court Did Not Abuse Its Discretion When It Found Exxon To Be The Prevailing Party.**

The superior court found that "Exxon is the prevailing party" and that attorney's fees should be calculated accordingly. Nautilus disputes this determination, arguing that because the superior court's underlying decision was in error, so too was its award of prevailing party status to Exxon. Because we hold that the superior court's underlying decision concerning the interpretation of the Settlement Agreement was not in error, Exxon is the prevailing party.[33]

V. **CONCLUSION**

We AFFIRM the decision of the superior court in all respects.

---

[33] *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1327 (Alaska 1993) (stating that the prevailing party is the one "who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered") (internal quotation marks omitted).